1  Robert M. Schwartz (SBN 117166)
   (rschwartz@irell.com)
2  Victor Jih (SBN 186515)
   (vjih@irell.com)
3  Matthew O. Kussman (SBN 313669)
   (mkussman@irell.com)
4  IRELL & MANELLA LLP
   1800 Avenue of the Stars, Suite 900
5  Los Angeles, California 90067-4276
   Telephone:   (310) 277-1010
6  Facsimile:   (310) 203-7199

7  Attorneys for Defendants
   Vivendi S.A., Studiocanal S.A.S.
8  and Ron Halpern

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13 CENTURY OF PROGRESS PRODUCTIONS; CHRISTOPHER 14 GUEST; ROB REINER PRODUCTIONS; UNITED 15 HEATHEN; and SPINAL TAP PRODUCTIONS; 16 | Case No. 2:16-cv-07733 DMG (AS) |
| | Case Filed:  October 17, 2016 |
|        Plaintiffs, 17 | **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR:** |
|    vs. 18 | **1. BREACH OF CONTRACT,** |
| VIVENDI S.A.; STUDIOCANAL 19 S.A.S.; and RON HALPERN, an individual, | **2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING,** |
| 20 | **3. FRAUD, AND** |
|        Defendants. 21 | **4. ACCOUNTING** |
| 22 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 23 | Hearing: May 5, 2017 |
| 24 | Time:      9:30 a.m. |
| | Place:     Courtroom 8C/350 W 1st Street |
| | Before:    Honorable Dolly M. Gee |

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

1

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2   PLEASE TAKE NOTICE THAT on May 5, 2017 at 9:30 a.m. or as soon

3   thereafter as the matter may be heard in the above-entitled Court located at 350

4   West 1st Street, Los Angeles, California, 90012, in Courtroom 8C – 8th Floor,

5   Defendants Vivendi S.A., Studiocanal S.A.S., and Ron Halpern, will move this

6   Court, pursuant to Rules 9 and 12 of the Federal Rule of Civil Procedure, to dismiss

7   Plaintiffs' First, Second, Third, and Fourth Claims for Relief.

8   This motion is brought on the grounds that Plaintiffs have failed to state a

9   claim upon which relief can be granted.  This motion is further brought on the

10   grounds that Plaintiffs have failed to plead their fraud claims with the requisite

11   specificity under Federal Rule of Civil Procedure 9(b).

12   This motion will be based upon this Notice; the accompanying memorandum

13   of points and authorities; the Declaration of Victor Jih; any and all exhibits filed in

14   support thereof; and any all oppositions or replies filed by the parties pursuant to

15   Local Rules 7-9 and 7-10 and any and all exhibits attached thereto; the pleadings

16   and entire case file in this action; the arguments of counsel at the time of the

17   hearing; and such other and further matters as the Court deems just and proper.

18   **This motion is made following the conference of counsel pursuant to**

19   **Local Rule 7-3 that took place on February 21, 2017.**

20

21   Dated:  February 28, 2017                    Respectfully submitted,

22                                               ROBERT M. SCHWARTZ
23                                               VICTOR JIH
                                                 MATTHEW O. KUSSMAN
24                                               IRELL & MANELLA LLP

25   By:

26                                               Robert M. Schwartz
                                                 Attorneys for Defendants
27                                               Vivendi S.A., Studiocanal S.A.S,
                                                 and Ron Halpern
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

DEFENDANTS' MOTION TO DISMISS

1

## **TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ..................................................................................1

4    II.   LEGAL STANDARD ............................................................................3

5    III.  CPP, GUEST, RRP, AND UH FAIL TO STATE CLAIMS FOR
         BREACH OF CONTRACT (COUNT I), BREACH OF THE
6        IMPLIED COVENANT (COUNT II) AND ACCOUNTING
         (COUNT IV) .........................................................................................4
7

8              A.    The Non-STP Plaintiffs Lack Standing ....................................4

9              B.    The Non-STP Plaintiffs Waived Any Right To Sue .................9

10   IV.   THE ENTIRE FRAUD CLAIM (COUNT III) MUST BE
         DISMISSED ..........................................................................................9
11

12             A.    The Non-STP Plaintiffs Have No Standing To State a
                   Fraud Claim ...........................................................................9
13

14             B.    STP Cannot Recast Its Breach of Contract Claims As
                   Torts ......................................................................................11
15
               C.    Plaintiffs Fail to Allege Fraud With the Requisite
16                  Specificity .............................................................................13

17   V.    CONCLUSION ....................................................................................14

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10131848.5 02                                    - i -

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Aas v. Super. Ct.*,

5

    24 Cal.4th 627 (2000)................................................................................................11

6

*Adams v. Johnson*,

    355 F.3d 1179 (9th Cir. 2004)..................................................................................4

7

*Ambers v. Wells Fargo Bank, N.A.*,

8

    No. 13-cv-03940 NC, 2014 WL 883752 (N.D. Cal. Mar. 3, 2014) .........................10

9

*Amesco Exports, Inc. v. Assoc. Aircraft Mfr. & Sales, Inc.*,

    977 F.Supp.1014 (C.D. Cal. 1997), *order vacated on other grounds*, 87

10

    F.Supp.2d 1013 (C.D. Cal. 1997)............................................................................7

11

*Bell Atl. Corp v. Twombly*,

12

    550 U.S. 544 (2007) ................................................................................................3

13

*Berclain Am. Latina v. Baan Co.*,

    74 Cal.App.4th 401 (1999)......................................................................................4

14

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*,

15

    94 Cal.App.4th 151 (2001)......................................................................................9

16

*Ebeid ex rel. United States v. Lungwitz*,

17

    616 F.3d 993 (9th Cir. 2010)..................................................................................13

18

*Farnham v. Superior Court*,

    60 Cal.App.4th 69 (1997)........................................................................................9

19

*Fladeboe v. Am. Isuzu Motors Inc.*,

20

    150 Cal.App.4th 42 (2007)......................................................................................5

21

*Food Safety Net Serv. v. Eco Safe Sys. USA, Inc.*,

22

    209 Cal.App.4th 1118 (2012)................................................................................12

23

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*,

    868 F.Supp.2d 983 (E.D. Cal. 2012)................................................................12, 13

24

*Goldrich v. Nat. Y Surgical Specialties, Inc.*,

25

    25 Cal.App.4th 772 (1994)................................................................................13, 14

26

*Harper v. Wausau Ins. Co.*,

27

    56 Cal.App.4th 1079 (1997)....................................................................................5

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

*Hatchwell v. Blue Shield of California*,
198 Cal.App.3d 1027 (1988)..................................................................................................10

*Holmes v. Columbia Pictures Corp.*,
109 F.Supp.327 (S.D. Cal. 1953) .............................................................................................8

*Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*,
No. C07-02499 JCS, 2009 WL 330259 (N.D. Cal. Feb. 10, 2009) ..........................................12

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
880 F.Supp.2d 1029 (N.D. Cal. 2012) ....................................................................................12

*Jones v. Aetna Casualty & Surety Co.*,
26 Cal.App.4th 1717 (1994).....................................................................................................5

*KnowledgePlex, Inc. v. Placebase, Inc.*,
No. C 08-4267 JF (RS), 2008 WL 5245484 (N.D. Cal. Dec. 17, 2008) ....................................8

*Lombardi v. Pleasure Cove Resort Asset Mgmt. Grp.*,
No. C 05-05219 RS, 2006 WL 1709723 (N.D. Cal. June 21, 2006).........................................11

*Maggio v. Windward Capital Mgmt. Co.*,
80 Cal.App.4th 1210 (2000)......................................................................................................6

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006).....................................................................................................4

*McClain v. First Mortg. Corp.*,
No. SACV 15-2JLS, 2015 WL 11199074 (C.D. Cal. Mar. 16, 2015) .....................................10

*Mega Life Health Ins. Co v. Superior Court*,
172 Cal.App.4th 1522 (2009)..................................................................................................10

*Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*,
629 F.Supp.2d 1135 (E.D. Cal. 2009) ................................................................................12, 13

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
319 F.Supp.2d 1040 (C.D. Cal. 2003)......................................................................................9

*NovelPoster v. Javitch-Canfield Grp.*,
No. 13-cv-05186-WHO, 2014 WL 5687344 (N.D. Cal. Nov. 4, 2014)...................................10

*Oracle USA, Inc. v. XL Glob. Serv., Inc.*,
No. C 09-00537 MHP, 2009 WL 2084154 (N.D. Cal. Jul. 13, 2009) .....................................11

*Pegasus Satellite Television, Inc. v. DirecTV, Inc.*,
318 F.Supp.2d 968 (C.D. Cal. 2004)........................................................................................6

*Philippine Airlines, Inc. v. McDonnell Douglas Corp.*,
189 Cal.App.3d 234 (1987)......................................................................................................9

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10131848.5 02

*The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*,
  88 Cal.App.4th 595 (2001).................................................................................................6

*Rich Products Corp. v. Kemutec, Inc.*,
  66 F.Supp.2d 937 (E.D. Wis. 1999)..................................................................................11

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal.4th 979 (2004).......................................................................................................11

*Schauer v. Mandarin Gems of California, Inc.*,
  125 Cal.App.4th 949 (2005).............................................................................................10

*Schulz v. Cisco Webex, LLC.*,
  Case No.13-cv-04987-BLF, 2014 WL 2115168 (N.D. Cal. May, 20, 2014)...........................5, 8

*Sherman v. British Leyland Motors, Ltd.*,
  601 F.2d 429 (9th Cir. 1979)..............................................................................................7

*Sofias v. Bank of Am.*,
  172 Cal.App.3d 583 (1985)..............................................................................................5, 9

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)..............................................................................................5

*Teselle v. McLoughlin*,
  173 Cal.App.4th 156 (2009)................................................................................................4

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015).............................................................................11

*Vinci v. Waste Mgmt, Inc.*,
  36 Cal.App.4th 1811 (1995)................................................................................................5

*Von Saher v. Norton Simon Museum of Art*,
  592 F.3d 954 (9th Cir. 2010)............................................................................................14

*Yue v. MSC Software Corp.*,
  No. 15-cv-05526-PJH, 2016 WL 3844366 (N.D. Cal. July 15, 2016)...............................10, 11

**Statutes**

17 U.S.C. § 203 ......................................................................................................................3

Cal. Civ. Proc. Code § 338(d) ..............................................................................................14

**Rules**

Fed. R. Civ. Proc. § 9(b) ......................................................................................................13

Fed. R. Civ. Proc. § 11 ...........................................................................................................2

Fed. R. Civ. Proc. § 12(b)(6).................................................................................................3

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

10131848.5 02

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.     INTRODUCTION**

3          Defendants have genuine admiration for the talents of Harry Shearer,

4   Christopher Guest, Michael McKean, and Rob Reiner.  All four made innumerable

5   creative contributions to the 1984 motion picture *This Is Spinal Tap* ("*Spinal Tap*"

6   or the "movie").  As a result of their efforts, and those of many others, the movie has

7   taken on cult status among American audiences despite its modest box-office

8   performance.  Regardless, neither they nor their personal services companies,

9   Century of Progress Productions ("CPP"), Christopher Guest ("Guest"), Rob Reiner

10  Productions ("RRP") and United Heathen ("UH"), have any right to file this lawsuit,

11  nor any basis to hurl its irresponsible and untrue accusations against defendants.

12          Under the 1982 contract for the production of *Spinal Tap* (the "Agreement"),

13  Spinal Tap Productions, Inc. ("STP") granted Embassy Pictures the intellectual

14  property rights in the movie in exchange for, among other things, contingent

15  compensation in the form of a percentage participation in the specified revenues

16  from the distribution of *Spinal Tap*, to the extent those revenues exceeded specified

17  expenses.  *See* 1982 Agreement, Exhibit A, at 2, 5-7.  Defendant Studiocanal, as the

18  successor to Embassy's rights and obligations under the 1982 Agreement, is now

19  responsible for accounting to STP for that participation.

20          Plaintiffs are in no position to accuse Studiocanal or the other defendants of

21  any wrongdoing in accounting for the movie's financial results.  It is customary for

22  participants, such as plaintiffs, to request that a qualified accountant review the

23  distributor's records on the participant's behalf to test whether the participation

24  statements comply with the parties' contract and to then submit a report to the

25  distributor that describes any alleged concerns.  If the participant and the distributor

26  disagree about the audit results, the participant may elect to file a lawsuit.

27          This case is no different.  The Agreement gives STP the right to have a

28  qualified accountant audit Studiocanal's relevant records, provides a time frame for

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 1 -                                DEFENDANTS' MOTION TO DISMISS

1  lodging any objections to the accounting, and permits STP to file a lawsuit within a

2  time frame should the parties be unable to resolve any objections.   Here, however,

3  plaintiffs never even got to the starting point.  ***Plaintiffs never requested, much less***

4  ***conducted, any audit***.  Thus, they lack the information they would need to assert

5  that Studiocanal rendered erroneous or improper *Spinal Tap* participation

6  statements, if that had happened.  However, it did not.  Had plaintiffs investigated

7  their lawsuit before filing it—a duty that at least the plaintiffs' lawyers bear under

8  Rule 11 of the Federal Rules of Civil Procedure—they would have learned that they

9  have no basis on which to assert any claims concerning the calculation and payment

10  of the *Spinal Tap* participation.  That is because Studiocanal has accounted and paid

11  STP's participation in accordance with the Agreement.

12         Plaintiffs may not like the fact that they have not received anything close to

13  the $400 million in contingent compensation that their complaint absurdly claims

14  they should have received.  But that is only because the movie they made has not

15  generated anywhere near the revenue necessary to pay them anything close to that

16  sum.  As a reality check on this lawsuit, even though *Spinal Tap* has garnered

17  affection in the United States, it has generated U.S. theatrical revenue of under $5

18  million.  Revenue from other sources and territories has been similarly modest.

19         Regardless, only STP, as the sole contracting party, has the right to pursue

20  these claims.  In addenda attached to the Agreement, each of plaintiffs CPP, Guest,

21  RPP, and UH acknowledged that these rights belonged to STP alone and agreed to

22  look to STP only—not to Embassy or its successor Studiocanal—for payment of the

23  participation.  Thus, all other plaintiffs should be dismissed.

24         Plaintiffs cannot attempt to bypass the Agreement's procedures by adding

25  CPP, Guest, RPP, and UH as plaintiffs.  These plaintiffs have no standing to bring

26  any breach of contract claim, any breach of implied covenant claim, or to seek an

27  accounting.  Nor can plaintiffs attempt to tortify their breach-of-contract dispute by

28  alleging fraud.  California law forecloses a plaintiff from recasting a breach of

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

DEFENDANTS' MOTION TO DISMISS

1  contract claim as one sounding in fraud.  In addition, even though this is plaintiffs'

2  second attempt to allege a claim for fraud, they have failed to plead it with the

3  requisite specificity.[1]

4      Mr. Shearer has created a separate controversy over *Spinal Tap* that this Court

5  ultimately will need to resolve.  After Mr. Shearer filed this lawsuit, he notified

6  Studiocanal and others that he intends to terminate their U.S. copyright interest in

7  the movie and its music under 17 U.S.C. Section 203.  That notice threatens

8  Studiocanal's ability to distribute *Spinal Tap* and to otherwise enjoy its lawful rights

9  to the movie.  To clear the cloud that Mr. Shearer has improperly placed on the

10  movie and music copyrights, once the Court resolves Studiocanal's challenges to the

11  complaint, Studiocanal will file a counterclaim for declaratory relief to confirm that

12  Mr. Shearer has no termination rights.  Mr. Shearer has attempted to act beyond the

13  scope of his rights because the movie and its music were created as works for hire.

14  The rights to such works are not eligible for termination under Section 203.

15  Because these issues arise under the Copyright Act, Studiocanal also will seek to

16  recover from Mr. Shearer the attorney's fees and costs it incurs to vindicate its

17  rights.  For now, however, Studiocanal will focus the Court's attention on the

18  incurable defects of the amended complaint.

19  **II.**    **LEGAL STANDARD**

20      A defendant may move to dismiss under Federal Rule of Civil Procedure

21  12(b)(6) for failure to allege "enough facts to state a claim to relief that is plausible

22  on its face."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  The Court is not

23  required to accept "conclusory allegations of law" but must scrutinize the factual

24

25

26  [1] Defendants have not moved against the Fifth Claim for Relief, which seeks
27  declaratory relief over the *Spinal Tap* trademarks.  Although the claim is baseless, its summary disposition requires the presentation of facts beyond those alleged in the complaint.  Accordingly, defendants will move for summary judgment against
28  that claim as soon as it is practical to do so.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 3 -    DEFENDANTS' MOTION TO DISMISS

1  allegations to determine if they state a valid claim.  *See Adams v. Johnson*, 355 F.3d

2  1179, 1183 (9th Cir. 2004).

3       Where a complaint alleges a breach of contract and expressly refers to that

4  contract, the Court can review that contract to verify the legal sufficiency of the

5  allegations.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Here, the

6  parties' contractual relationship is embodied in the Agreement, "Inducement

7  Letters," and a set of standard terms, all of which are attached as Exhibit A to the

8  accompanying Declaration of Victor Jih.  Because the First Amended Complaint

9  ("FAC") references and relies on these documents *(see* FAC ¶ 30), the Court may

10 consider them in ruling on this motion.

11 **III.   CPP, GUEST, RRP, AND UH FAIL TO STATE CLAIMS FOR**

12 **BREACH OF CONTRACT (COUNT I), BREACH OF THE IMPLIED**

13 **COVENANT (COUNT II) AND ACCOUNTING (COUNT IV)**

14      To the extent there are any contractual rights to vindicate, STP—as the party

15 to the Agreement—is the only plaintiff with any right to proceed.  The other

16 plaintiffs CPP, Guest, RRP, and UH ("the non-STP plaintiffs") may not piggyback

17 onto any breach of contract or implied covenant claims STP may have, nor can they

18 assert any right to an accounting.  *See Teselle v. McLoughlin*, 173 Cal.App.4th 156,

19 179 (2009) ("A cause of action for an accounting requires a showing that a

20 relationship exists between the plaintiff and defendant that requires an accounting").

21      **A.   The Non-STP Plaintiffs Lack Standing**

22      "It is elementary that a party asserting a claim must have standing to do so.  In

23 asserting a claim based upon a contract, this generally requires the party to be a

24 signatory to the contract, or to be an intended third party beneficiary."  *Berclain Am.*

25 *Latina v. Baan Co.*, 74 Cal.App.4th 401, 405 (1999).

26      CPP, Guest, RRP, and UH are neither signatories nor parties to the

27 Agreement.  The Agreement is signed only by Christopher Guest in his capacity as

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

DEFENDANTS' MOTION TO DISMISS

1 president of STP.[2]  *See* Exhibit A at 12.  The Agreement makes clear that the

2 contracting parties are "Embassy Pictures [Studiocanal's predecessor] … and Spinal

3 Tap Productions" and defines the contract as the "production distribution agreement

4 between Embassy and Producer…."  Exhibit A at 2, 71.  Although CPP, Guest,

5 RRP, and UH collectively own STP (FAC ¶ 25), under California law a person or

6 entity does not become a party to a contract—and obtain standing to sue for its

7 breach—simply because it has an ownership interest in the entity that *is* a party to

8 the contract.  To the contrary, where the claim is based on a contract entered into by

9 a corporate entity, "[t]he remedy lies with the corporation, not the shareholder, even

10 if the injured shareholder is the sole shareholder."  *Vinci v. Waste Mgmt, Inc.*, 36

11 Cal.App.4th 1811, 1815 (1995); *see also Fladeboe v. Am. Isuzu Motors Inc.*, 150

12 Cal.App.4th 42, 44 (2007).

13      Recognizing this problem, plaintiffs amended their complaint to allege that

14 CPP, Guest, RRP, and UH are intended third-party beneficiaries.  *See* FAC ¶ 55.

15 However, this Court is not "required to accept as true allegations that are merely

16 conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell*

17 *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The Court must

18 scrutinize the underlying factual allegations to see if the claim is valid.

19      For an individual to qualify as a third-party beneficiary, the contracting

20 parties must intend to benefit that individual directly and that intent must appear in

21 agreement.  *See Harper v. Wausau Ins. Co.*, 56 Cal.App.4th 1079, 1087 (1997);

22 *Sofias v. Bank of Am.,*172 Cal.App.3d 583, 587 (1985) (a "third party beneficiary

23 must show the contract was made *expressly* for his or her benefit.").  "The fact that

24 … the contract, if carried out to its terms, would inure to the third party's benefit[,]

25 is insufficient to entitle him or her to demand enforcement."  *Jones v. Aetna*

26

27 _____
**2** Similarly, an individual does not become a party—or a third-party beneficiary—to
28 a contract by signing it in a representative capacity.  *See Schulz v. Cisco Webex, LLC.*, Case No.13-cv-04987-BLF, 2014 WL 2115168 (N.D. Cal. May, 20, 2014).

1  *Casualty & Surety Co.*, 26 Cal.App.4th 1717, 1724-1725 (1994).  Whether a third

2  party should be given the ability to demand enforcement is ultimately a matter of the

3  contracting parties' intent and, as with any contractual interpretation issue, "[i]f

4  [the] contractual language is clear and explicit, it governs."  *Maggio v. Windward*

5  *Capital Mgmt. Co.*, 80 Cal.App.4th 1210, 1214 (2000).

6          Here, the Agreement could not be more clear.  Section 7.03 of Exhibit B to

7  the Agreement contains an express "No Third Parties Beneficiaries" provision.  The

8  provision states the "Agreement is not for the benefit of any third party and shall not

9  be deemed to give any right or remedy to any such party, whether referred to herein

10  or not, except if and to the extent specifically set forth in Article 1 to the contrary."

11  *See* Exhibit A at 68.  Article 1 does not designate any plaintiff as a third party

12  beneficiary of the participation in the movie's distribution proceeds, nor do plaintiffs

13  allege that it does.  In addition, the Agreement also states that "Producer [STP] shall

14  be solely responsible out of any Net Receipts payable to Producer for the payment

15  of any sums computed or based upon Net Receipts or Gross Receipts payable to any

16  third parties."  *See* Exhibit A at 81.  These disclaimers make "the intention of the

17  parties clear: they intended to limit the rights under the contract to the parties."  *The*

18  *Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal.App.4th 595 (2001); *see also*

19  *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F.Supp.2d 968, 977 (C.D.

20  Cal. 2004) (refusing to "abrogate an express no-third party beneficiary provision").

21          Plaintiffs' amended complaint fails to mention these provisions.  Instead, it

22  alleges that third-party beneficiary status arises under: (1) Paragraph 12 of the

23  Agreement; (2) the Inducement Letters signed by CPP, Guest, RRP, and UH; and

24  (3) the provisions calling for their services, "which granted them rights including

25  fixed, deferred and contingent compensation, all of which would be paid to them if

26  Defendants had honored their accounting and other obligations in the Agreement."

27  FAC ¶ 55.  None of these allegations supports third-party beneficiary status.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1      First, Paragraph 12 does not state that CPP, Guest, RRP, and UH are intended

2  third-party beneficiaries.  Paragraph 12 says only that: "Ownership of Producer.  It

3  is hereby acknowledged that Producer is entirely owned by Rob Reiner Productions,

4  United Heathen, Century of Progress Productions, and Christopher Guest."

5  Ownership of a contracting party does not confer third-party beneficiary status on

6  the owner.  Even a *sole* shareholder is not a third-party beneficiary of his

7  corporation's contracts.  *See Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429,

8  439 (9th Cir. 1979) (holding sole shareholder and president who had also personally

9  undertaken some of the corporation's obligations lacked third-party standing).  If it

10 were otherwise, every shareholder could sue on a contract to which a corporation

11 was a party.  *See Amesco Exports, Inc. v. Assoc. Aircraft Mfr. & Sales, Inc.*, 977

12 F.Supp.1014, 1016 (C.D. Cal. 1997), *order vacated on other grounds*, 87 F.Supp.2d

13 1013 (C.D. Cal. 1997).

14     Second, the Inducement Letters do not provide evidence of an intent to confer

15 third-party beneficiary status on these persons.  The letters are promises from the

16 non-STP plaintiffs and their employees *to* Embassy Pictures (and, thus, to

17 Studiocanal)—not the other way around.  By their express terms, the Inducement

18 Letters make clear that the parties did ***not*** intend to give the non-STP plaintiffs any

19 right to sue.  CPP, Guest, RRP, and UH agreed they would "look solely to Employer

20 [STP] for the payment of any and all compensation or other payments which are

21 required to be made to it or on its behalf as a result of the rendition by it of services

22 pursuant to the foregoing Agreement."  Exhibit A at 13-19.  These Letters leave no

23 doubt that the *only* intended beneficiary of Embassy's payments is STP.  STP and

24 Embassy expressly ensured that the non-STP plaintiffs would not have the right to

25 sue.  And CPP, Guest, RRP, and UH expressly agreed they would not do so.

26     Finally, the non-STP plaintiffs claim there are (unspecified) provisions in the

27 Agreement that require them to render services or which (they claim) grant them

28 rights to fixed, deferred, and contingent compensation.  FAC ¶ 55.  As to the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

- 7 -                                          DEFENDANTS' MOTION TO DISMISS

1  provisions that require the non-STP plaintiffs to render services on the movie, they

2  have no bearing on whether Embassy and STP intended to give the non-STP entities

3  the right to sue and, in fact, gave them such right.  Such general provisions are

4  particularly insufficient here, given that the Agreement and the Inducement Letters

5  expressly state that all compensation for those services will come from STP alone.

6  As to the provisions that grant *STP* the right to receive that compensation, they are

7  irrelevant because those provisions are not in dispute.  There are no provisions in the

8  Agreement that grant fixed or contingent compensation to the non-STP plaintiffs.

9  *See e.g., KnowledgePlex, Inc. v. Placebase, Inc.*, No. C 08-4267 JF (RS), 2008 WL

10  5245484 (N.D. Cal. Dec. 17, 2008) (any third-party beneficiary claim must be based

11  on the relevant portions of the contract at issue).

12       The non-STP plaintiffs cannot identify any provisions in the Agreement that

13  makes each of them an intended third-party beneficiary of the provisions granting

14  compensation to STP.  No provision in the Agreement states that the contingent

15  compensation is to be paid to CPP, Guest, RRP, or UH.  To the contrary, the

16  Agreement states that any such compensation is to be paid to STP alone.  That is

17  clear not only from the provisions quoted above, but also from, for example,

18  paragraph 4b, which begins by stating "Embassy shall pay *Producer [STP]* a sum

19  equal to Forty (40%) … of the Net Receipts …."  *See* Exhibit A at 7 (emphasis

20  added); FAC ¶ 33.  Similarly, the disclaimer in section II of Exhibit 1, concerning

21  receipts, states that payment is to be made directly to STP and that any distribution

22  thereafter to third-parties was the prerogative of STP alone.  *See* Exhibit A at 81.

23       Plaintiffs may not simply treat STP and its owners as one entity while

24  "mak[ing] no attempt to differentiate between their rights under the contract."

25  *Schulz v. Cisco Webex, LLC*, Case No.13-cv-04987-BLF, 2014 WL 2115168, (N.D.

26  May 20, Cal. 2014).  Where the benefit is indirect, the third-party does not become

27  an intended beneficiary simply because the parties are aware a benefit will

28  eventually flow to them.  *See Holmes v. Columbia Pictures Corp.*, 109 F.Supp.327

1  (S.D. Cal. 1953) (individual was not a third-party beneficiary even where contract

2  acknowledged he would receive a portion of the proceeds); *Sofias v. Bank of Am.*,

3  172 Cal.App.3d 583, 587 (1985) (rejecting third-party beneficiary status because

4  "[n]o benefit directly flowed to [the plaintiff]").

5  **B.    The Non-STP Plaintiffs Waived Any Right To Sue**

6  Even if the non-STP plaintiffs had standing as third-party beneficiaries, they

7  have waived their right to sue.  "Under California law, parties may agree by their

8  contract to the limitation of their liability in the event of a breach."  *Nat'l Rural*

9  *Telecomm. Coop. v. DirecTV, Inc.*, 319 F.Supp.2d 1040, 1048 (C.D. Cal. 2003); *see*

10  *also Philippine Airlines, Inc. v. McDonnell Douglas Corp.*, 189 Cal.App.3d 234,

11  237 (1987) ("Commercial entities … are entitled to contract to limit the liability of

12  one to the other, or otherwise allocate the risk of doing business.").  Accordingly,

13  agreements expressly stating that a party will look *solely* to a particular entity for

14  relief are enforceable.  *See Farnham v. Superior Court*, 60 Cal.App.4th 69, 78

15  (1997); *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94

16  Cal.App.4th 151, 167 (2001).

17  As indicated above, the non-STP plaintiffs signed Inducement Letters stating

18  that they would "look solely to Employer [STP] for the payment of any and all

19  compensation or other payments which are required to be made to it or on its behalf

20  as a result of the rendition by it of services pursuant to the foregoing Agreement."

21  Exhibit A at 13-19.  This not only refutes any claim that they are third-party

22  beneficiaries, it expressly waives any right to sue even if they were.

23  **IV.    THE ENTIRE FRAUD CLAIM (COUNT III) MUST BE DISMISSED**

24  **A.    The Non-STP Plaintiffs Have No Standing To State a Fraud Claim**

25  The FAC makes clear that plaintiffs' fraud claim is derived from the same

26  allegations that comprise the contract claim.  *See* FAC ¶¶ 64-65.  But because CPP,

27  Guest, RRP, and UH lack standing to bring contract claims, they also lack standing

28  to claim fraud based on that contract.

1    A "person who is not a party to a contract does not have standing either to

2 seek its enforcement or to bring tort claims based on the contractual relationship."

3 *Ambers v. Wells Fargo Bank, N.A.*, No. 13-cv-03940 NC, 2014 WL 883752, at *4

4 (N.D. Cal. Mar. 3, 2014); *see also McClain v. First Mortg. Corp.*, No. SACV 15-

5 2JLS (JCGx), 2015 WL 11199074, at *2 (C.D. Cal. Mar. 16, 2015); *Hatchwell v.*

6 *Blue Shield of California*, 198 Cal.App.3d 1027, 1034 (1988) ("Someone who is not

7 a party to the contract has no standing to enforce the contract or to recover extra-

8 contract damages for wrongful withholding of benefits to the contracting party.").

9    Thus, in *Mega Life Health Ins. Co v. Superior Court*, 172 Cal.App.4th 1522

10 (2009), the plaintiff alleged that the defendant health insurance company defrauded

11 him in connection with a policy issued to his deceased wife. *Id.* at 1525.  The court

12 rejected his claim, explaining that a "tort … involves a violation of a *legal duty*,

13 imposed by statute, contract, or otherwise, owed by the defendant to the person

14 injured and '[w]ithout such a duty, any injury is 'damnum absque injuria' –injury

15 without wrong." *Id.* at 1527.  The defendant "simply owed no duty to a person who

16 was not the prospective party to the insurance contract." *Id.* at 1530*; see also*

17 *Schauer v. Mandarin Gems of California, Inc.*, 125 Cal.App.4th 949 (2005) (even an

18 intended third-party beneficiary could not bring claims for fraud based on the

19 contract); *NovelPoster v. Javitch-Canfield Grp.*, No. 13-cv-05186-WHO, 2014 WL

20 5687344 at *6 (N.D. Cal. Nov. 4, 2014) ("Because counterclaimant's fraud …

21 claims are all squarely based on a contractual relationship to which counterclaimants

22 have not alleged they were a party, these causes of action must also be dismissed.").

23    The fact that CPP, Guest, RRP, and UH had an ownership interest in the

24 contracting party, STP, does not change this rule.  In *Yue v. MSC Software Corp.*,

25 No. 15-cv-05526-PJH, 2016 WL 3844366, (N.D. Cal. July 15, 2016), the plaintiff

26 had not only a partial ownership interest in the company that was party to the

27 subject contract, but was also its founder and sole owner. *Id.* at *1.  The individual

28 plaintiff alleged that the defendant made misrepresentations to him concerning that

contract. *Id.* at \*3. The court rejected the fraud claim, finding that the company, as the party to the contract, was the only entity that could have relied on the misrepresentations, and, as such, the plaintiff lacked standing to claim fraud. *Id.* at \*4; *see Lombardi v. Pleasure Cove Resort Asset Mgmt. Grp.*, No. C 05-05219 RS, 2006 WL 1709723, at \*3 (N.D. Cal. June 21, 2006) (LLC member lacked standing to assert claims based on defendant's wrongful acts with respect to LLC's contract).

### B. STP Cannot Recast Its Breach of Contract Claims As Torts

STP's fraud claim fails for a different reason. The fraud claim alleges that "Defendants, by and through their agent Ron Halpern, repeatedly made statements to Plaintiffs' agents that Mr. Halpern and his staff were fully complying with the underlying Agreement, were providing accurate and reliable accountings to Plaintiffs, and were using all available means to enforce Spinal Tap trademarks and copyrights and to maximize revenue for the Spinal Tap creators." FAC ¶ 64. Plaintiffs claim these statements were false, and were made to "depriv[e] Plaintiffs of financial consideration due under the Agreement." *Id.* ¶ 65. These fraud allegations are functionally identical to the contract claim.

California law is clear, however, that, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Aas v. Super. Ct.*, 24 Cal.4th 627, 643 (2000). The "fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *Oracle USA, Inc. v. XL Glob. Serv., Inc.*, No. C 09-00537 MHP, 2009 WL 2084154 (N.D. Cal. Jul. 13, 2009); *see UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015). This rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004) (quoting *Rich Products Corp. v. Kemutec, Inc.*, 66 F.Supp.2d 937, 969 (E.D. Wis. 1999)).

1    While there is an exception to this rule when "conduct amounting to a breach

2  of contract also violates a duty independent of the contract, such as where a party

3  commits fraud in the inducement of the contract," the plaintiffs do not allege

4  fraudulent inducement.  *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment,*

5  *Inc.*, 868 F.Supp.2d 983, 992 (E.D. Cal. 2012).  Instead, they claim that

6  misrepresentations were made during the performance of the contract.  *See* FAC

7  ¶ 64.  "A tort cause of action will not lie on those facts."  *JMP Sec. LLP v. Altair*

8  *Nanotechnologies Inc.,* 880 F.Supp.2d 1029, 1042 (N.D. Cal. 2012) (finding false

9  assurances to pay designated fee under contract could not support claim for fraud).

10    For example, in *Foster Poultry*, the plaintiff claimed that the defendant

11  intentionally and falsely assured the plaintiff that it would be indemnified under

12  their contractual arrangement and subsequently failed to do so.  *Foster Poultry,* 868

13  F.Supp.2d at 992.  The court held that even taking the allegations as true, the

14  damages sought were the same as those arising from the alleged breach of contract.

15  *Id.*  As a result the fraud claim was barred.  *Id.* at 994; *see also Food Safety Net*

16  *Serv. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App.4th 1118, 1131-1132 (2012) (holding

17  that allegation that defendant intentionally misstated food safety tests and reports

18  did not support a claim for fraud because defendant's "obligation to perform the

19  tests and report the results arose exclusively from the contract.").

20    Similarly, in *Multifamily Captive Grp., LLC v. Assurance Risk Managers,*

21  *Inc.*, 629 F.Supp.2d 1135 (E.D. Cal. 2009), the plaintiff attempted to state claims for

22  fraud based on false "assurances allegedly made by defendant related to its duty

23  under the contract."  *Id.* at 1146.  The court denied these claims because the

24  damages sought were the same economic losses arising from the alleged breach of

25  contract.  *Id.*  The court held that "[t]o allow a fraud claim under these facts would

26  'open the door to tort claims in virtually every case in which a party promised to

27  make payments under a contract but failed to do so.'"  *Id.* (quoting *Intelligraphics,*

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 12 -

DEFENDANTS' MOTION TO DISMISS

*Inc. v. Marvell Semiconductor, Inc.*, No. C07-02499 JCS, 2009 WL 330259, at \*17 (N.D. Cal. Feb. 10, 2009).

As in *Foster Poultry* and *Multifamily*, the plaintiffs claim damages for moneys owed to them under the Agreement. Their allegations that defendants intentionally breached their obligations or misrepresented that they were performing those obligations are irrelevant. No claim for fraud lies in these circumstances.

### C.   Plaintiffs Fail to Allege Fraud With the Requisite Specificity

Even if plaintiffs could make a claim for fraud, their conclusory allegations fail to comply with Rule 9(b)'s pleading requirements. Under Rule 9(b), a complaint must "state with particularity the circumstances constituting fraud … including the *who*, *what*, *when*, *where* and *how* of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (emphasis added). The complaint fails to set forth any specific statements by a particular defendant, fails to explain how any such statements were false, and fails to explain how plaintiffs relied on them to their detriment. "Even in a case involving numerous oft-repeated misrepresentations, the plaintiff must, at a minimum, set out a representative selection of the alleged misrepresentations sufficient to permit the trial court to ascertain whether the statements were material and otherwise actionable." *Goldrich v. Nat. Y Surgical Specialties, Inc.*, 25 Cal.App.4th 772, 783 (1994). Plaintiffs' amended complaint fails to do so.

The only specific allegations concern the 2000 re-release of *Spinal Tap*. In paragraph 42, plaintiffs allege that "[i]n advance of the theatrical re-release of the film in 2000, managed for Canal by Ron Halpern, Mr. Shearer was asked to fly to London to meet with Halpern." FAC ¶ 42. Plaintiffs claim that Mr. Halpern represented that the re-release in the United Kingdom was being assigned to a "small 'boutique' distributor." *Id.* Plaintiffs allege that "Mr. Shearer responded by sharing ideas with Halpern." *Id.* Plaintiffs claim this was fraudulent because "[w]hen Shearer returned to Los Angeles, Mr. Shearer learned that in fact the United

1  Kingdom distributor was not an independent 'boutique,' but a subsidiary of Metro-

2  Goldwyn-Mayer." *Id.*

3      There is no need to consider the inaccuracies of these allegations or to assess

4  the legal sufficiency of the claim (*i.e.*, whether Shearer's discussion of ideas with

5  defendants could constitute detrimental reliance under these circumstances, and

6  whether CPP, as opposed to Mr. Shearer, possesses standing to assert a fraud claim

7  concerning supposed acts made in reliance by Mr. Shearer himself and not the

8  Plaintiff).  Even if these allegations were credited, any attempt to bring a fraud claim

9  concerning events in 2000 is time-barred.  The statute of limitations for fraud in

10  California is three years.  Cal. Civ. Proc. Code § 338(d).  Shearer admits he

11  discovered the falsity of the alleged statements (that the distributor was a subsidiary

12  of Metro-Goldwyn-Mayer) in 2000; yet plaintiffs did not file suit to allege the claim

13  until 2016.  As such, the claim is time-barred on its face and must be dismissed.  *See*

14  *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010).

15  **V.      CONCLUSION**

16      For the foregoing reasons, defendants respectfully request that the Court

17  dismiss plaintiffs Guest, RRP, and UH from this case.  In addition, defendants

18  request that the Court dismiss CPP except as to Count V for declaratory judgment

19  on *Spinal Tap* trademark rights.  Lastly, defendants respectfully request that the

20  Court dismiss Count III for fraud, in its entirety.

21

22  Dated:  February 28, 2017                    Respectfully submitted,

23                                               IRELL & MANELLA LLP

24

25                                               By:

26                                               Robert M. Schwartz
                                                 Attorneys for Defendants
27                                               Vivendi S.A., Studiocanal S.A.S.
                                                 and Ron Halpern

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

DEFENDANTS' MOTION TO DISMISS