UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7733-DMG (ASx)** | Date | September 28, 2017 |
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 1 of 11 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTION TO DISMISS [24]**

Before the Court is Defendants Vivendi S.A.'s ("Vivendi"), Studiocanal S.A.S.'s ("Studiocanal"), and Ron Halpern's motion to dismiss ("MTD") portions of Plaintiffs Century of Progress Productions ("CPP"), Christopher Guest, Rob Reiner Productions ("RRP"), United Heathen ("UH"), and Spinal Tap Productions' ("STP" and, collectively, "Plaintiffs") first amended complaint ("FAC") [Doc. # 19]. [Doc. # 24.]

## I.
## FACTUAL BACKGROUND[1]

This lawsuit relates to the motion picture *This Is Spinal Tap* ("TIST") and the rights of its creators and performers. TIST is a 1984 motion picture, filmed as a documentary, about a fictional British rock band, Spinal Tap, in the middle of an American tour. FAC at ¶¶ 25, 27.

**A.    The Parties**

Non-parties Harry Shearer, Rob Reiner, and Michael McKean co-created and starred in TIST. FAC at ¶¶ 2, 4, 5. Plaintiff CPP is Shearer's loan-out company,[2] Plaintiff RRP is Reiner's

---

[1] The Court accepts all factual allegations in the FAC as true solely for the purpose of deciding the motion to dismiss, except where they contradict documents properly subject to the Court's consideration. For example, the Court also considers, under the incorporation by reference doctrine, the agreement underlying this action, which the FAC expressly references and upon which it relies, although Defendants, not Plaintiffs, filed the document as an attachment to its motion to dismiss. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[2] Loan-out companies are common practice in the entertainment industry. "A loan-out corporation is a legal fiction employed for the financial benefit of successful artists and entertainers. It is a duly organized corporation, typically wholly owned by an artist, the sole function of which is to 'loan out' the services of the artist-owner to producers and other potential employers. The form offers 'limited personal liability and beneficial tax treatment.'" *Bozzio v. EMI Group Limited*, 811 F.3d 1144, 1147 (9th Cir. 2016) (citation omitted) (quoting Aaron J. Moss & Kenneth Basin, *Copyright Termination and Loan-Out Corporations: Reconciling Practice and Policy*, 3 Harv. J. Sports & Ent. L. 55, 72 (2012)).

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

Case 2:16-cv-07733-DMG-AS   Document 32   Filed 09/28/17   Page 2 of 11   Page ID #:370

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733-DMG (ASx) | Date | September 28, 2017 |

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 2 of 11 |

loan-out company, and Plaintiff UH is McKean's loan-out company. *Id.* at ¶ 8; Opposition at 5 [Doc. # 29]. Plaintiff Guest is another of TIST's co-creators and stars. FAC at ¶ 3. Plaintiff STP is a California corporation that, at all relevant times, was entirely owned by CPP, Guest, RRP and UH. *Id.* at ¶ 16. Guest, CCP, RRP, and UH formed and incorporated STP on May 6, 1982 in order to turn the short film "Spinal Tap" into a feature-length film, TIST. *Id.* at ¶ 25. Although STP was dissolved in or around June 1986, it brings suit under California Corporations Code section 2010 to collect and distribute to its owners all royalties and other monies. *Id.* Guest is STP's president. *See id.* at ¶ 30.

Defendant Studiocanal is a subsidiary of Defendant Vivendi, a French corporation. *Id.* at ¶¶ 17–18. Defendant Halpern is one of Studiocanal's executives. *Id.* at ¶ 19. In or around 1989, predecessors of Vivendi's subsidiaries acquired pertinent TIST rights. *Id.* at ¶ 35.

**B.     The 1982 Agreement**

On May 7, 1982, STP entered into an 11-page letter agreement (the "Letter Agreement") with Embassy Pictures ("Embassy") for the production, financing, and distribution of TIST. *See id.* at ¶ 25; Exhibit A to MTD at 2–12 (Letter Agreement) [Doc. # 24-2].[3] Guest, as STP's president, signed the Letter Agreement. FAC at ¶ 30; Letter Agreement at 11. Under the Letter Agreement's terms, Guest, Reiner, Shearer, and McKean are pre-approved personnel defined in as the "Screenplay Writers" and "Actors," and the Agreement provides for their fixed, deferred, and contingent compensation and other royalties. FAC at ¶ 26, 32; Letter Agreement at ¶ 2, 4, 6. The Letter Agreement mentions these individuals by name and through references to the aforementioned defined terms throughout the document. *See* Letter Agreement at ¶¶ 2, 4–8, 12–13. The Letter Agreement also twice mentions RRP, CCP, and UH. FAC at ¶ 31; Letter Agreement at ¶¶ 12 ("It is hereby acknowledged that [STP] is entirely owned by [RRP], [UH], [CCP] and . . . Guest."), 13("Embassy shall endeavor to add [STP], [RRP], [UH], [CCP], Reiner, Shearer, McKean[,] and Guest as additional named insureds in its errors and omissions insurance policy.").

The entire production, financing, and distribution agreement (the "1982 Agreement") between STP and Embassy consists of several documents, including, as relevant here, the Letter Agreement, four inducement letters,[4] a 48-page Exhibit B, and Exhibit 1 to Exhibit B. *See* FAC

---

[3] Because Exhibit A spans four docket entries [Doc. ## 24-2–24-5], the Court follows the pagination assigned by Defendants, rather than the PDF pagination assigned by CM/ECF.

[4] "When a production company enters into an agreement with an artist's loan out corporation, the company has the artist sign an 'inducement letter,' which requires that the artist be bound by the loan out contract with the production company. An inducement letter is essentially an agreement between the artist and the loan out corporation in which the artist agrees to adhere to the terms and conditions of any agreement between the production

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 16-7733-DMG (ASx) | Date | September 28, 2017 |
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 3 of 11 |

at ¶ 30; Exhibit A to MTD at 13–19 (inducement letters) [Doc. # 24-2], 21–70 (Exhibit B), 71–84 (Exhibit 1) [Doc. ## 24-3–24-5]. If there is an inconsistency between the Letter Agreement and Exhibit B, the Letter Agreement "shall prevail." Letter Agreement at ¶ 13.

The three inducement letters that pertain to Reiner, McKean, Shearer, and their respective loan-out companies contain two levels of inducement: first to induce Embassy and STP to enter into the Letter Agreement, and then to induce the loan-out company to execute the Embassy–STP inducement letter on the loan-out company's behalf. For example, the Reiner–RRP inducement letter first presents an acknowledgment by RRP, the loan-out company, that it is familiar with the Letter Agreement's terms, that STP may enter into the Letter Agreement, that RRP "will own one quarter (1/4) of all the shares of [STP]," and that RRP will perform all personal services required under the Letter Agreement. Exhibit A at 13; *see also id.* at 15 (same with regard to McKean and UH); *id.* at 17 (same with regard to Shearer and CCP). Reiner signed the first level inducement on behalf of RRP. *Id.* at 13; *see also id.* at 15 (same with regard to McKean and UH); *id.* at 17 (same with regard to Shearer and CCP). Below that is a nearly identical acknowledgment by Reiner that gives STP the right to contract with Embassy for his services, states that he will own "directly or indirectly" all of RRP's shares of STP, and states that he agrees to perform all services required of him under the Letter Agreement. *Id.* at 13–14; *see also id.* at 15–16 (same with regard to McKean and UH); *id.* at 17–18 (same with regard to Shearer and CCP). The fourth inducement letter relates to Guest's services and ownership of STP, and it contains only one level of inducement. *See id.* at 19. The inducement letters all contain language that Reiner, McKean, Shearer, and Guest "shall look solely to [the loan-out company] for the payment of any and all compensation or other payments which are required to be made to him or on his behalf as a result of the rendition by him of services pursuant to the foregoing [Letter] Agreement." *Id.* at 14, 16, 18, 19.

Notably, paragraph 7.03 of Exhibit B to the Letter Agreement is a "No Third Party Beneficiaries" provision, which states, "This Agreement is not for the benefit of any third party and shall not be deemed to give any right or remedy to any such party, whether referred to herein or not, except if and to the extent specifically set forth in Article 1 to the contrary." Exhibit A at 68 [Doc. # 24-5]. Article I, entitled "Basic Provisions," includes the following clause:

    1.01   <u>The Photoplay</u>.  The Photoplay shall contain the following principal elements:

        Literary Property    :    [blank]

        Screenplay    :    screenplay of __ pages in length dated ____.

---

company and the loan out corporation that calls for the artist's services." Alan S. Gutterman & Meredith Lobel-Angel, *California Transactions Forms Business Transactions* § 10:62 (2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | **CV 16-7733-DMG (ASx)** | Date  September 28, 2017 |
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page  4 of 11 |

| | | |
|---|---|---|
| Screenplay Writers | : | [blank] |
| Director | : | [blank] |
| Principal Artist | : | [blank] |
| Budget | : | [blank] |
| Shooting Schedule | : | [blank] |
| Executive Producer | : | [blank] |
| Individual Producer | : | [blank] |
| Production Company | : | Producer |

Exhibit A at 21–22 [Doc. # 24-3]. Exhibit 1 contains a provision that states, "[STP] shall be solely responsible out of any net Receipts payable to [STP] for the payment of any sums computed or based upon Net Receipts or Gross Receipts payable to any third parties." Exhibit A at 81 [Doc. # 24-5].

**C.      Accounting Under the 1982 Agreement**

In or around 1989, the rights to TIST were acquired by predecessors of Vivendi's subsidiaries, and Vivendi became responsible for accounting under the Agreement. FAC at ¶¶ 35–36. STP has received some profit participation statements. *Id.* at ¶ 36. Plaintiffs recently discovered errors in the statements, and since December 31, 2013, Vivendi and Studiocanal have failed to account at all for TIST revenues. *Id.* Plaintiffs allege further that the Vivendi accountings are not at arm's length, are anticompetitive, and "deprive[] the TIST creators of a fair reward for their services." *Id.* at ¶ 37. A CPP-commissioned study showed in November 2013 that Vivendi and Defendants engaged in "willful misconduct" to deprive Plaintiffs of the benefits the 1982 Agreement allegedly conferred on them. *Id.* at ¶¶38–40; *see also id.* at ¶ 40 (cataloguing the misconduct in list form).

Yet, Halpern "repeatedly assured" Plaintiffs that he and his staff were conducting and providing accurate accountings, were promoting TIST assets, including its intellectual property, to maximize revenue for TIST's creators, and were complying fully with the 1982 Agreement—assurances on which Plaintiffs relied. *Id.* at ¶ 41. CCP learned of Defendants' misconduct in November 2013, and the remaining Plaintiffs learned after this suit's initial filing in October 2016. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7733-DMG (ASx)** | Date | September 28, 2017 |
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 5 of 11 |

## II.
## LEGAL STANDARD

Under Federal Rule of Procedure 12(b)(6), a party may move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015). At the 12(b)(6) stage, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Federal pleading standards require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Although this standard requires that a claim be 'plausible on its face,' it does not require that a complaint contain 'detailed factual allegations.'" *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048–49 (9th Cir. 2012). A claim must nonetheless contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid, ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

## III.
## DISCUSSION

Defendants seek dismissal of the following: (1) Guest, CPP, RRP, and UH from the causes of action for breach of contract, breach of the implied covenant, and accounting; and (2) the cause of action for fraud in its entirety.

**A.      Dismissal of Guest, CCP, RRP and UH**

Defendants contend that Guest, CCP, RRP, and UH do not have standing to sue on any of the 1982 Agreement's contractual rights because STP was the sole party to that agreement and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7733-DMG (ASx)** | Date | September 28, 2017 |
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 6 of 11 |

none of the Non-contracting Plaintiffs are third-party beneficiaries ("TPBs"). MTD at 10–15. Alternatively, Defendants argue that these Plaintiffs waived any right to sue they may have had as TPBs to the 1982 Agreement. *Id.* at 15.

### 1. Contractual Standing

It is axiomatic under California law that a party asserting a claim based upon a contract must have been either a party to the contract or an intended TPB. *See Berclain Am. Latina v. Baan Co.*, 74 Cal. App. 4th 401, 405 (1999) (calling this principle "elementary"); *NovelPoster v. Javitch Canfield Grp.*, No. 13-cv-05186-WHO, 2014 WL 5687344, at *5 (N.D. Cal. Nov. 4, 2014) (collecting federal district court cases applying California law on this issue). Plaintiffs concede that the 1982 Agreement was between STP—not Guest, CCP, RRP, or UH—and Embassy, and they proceed instead under the theory that Guest, CCP, RRP, and UH (the "Non-contracting Plaintiffs") were intended TPBs. FAC at ¶¶ 54–55.

Defendants base their non-TPB argument on the following: (1) paragraph 7.03's express no-TPB provision; (2) paragraph 7.03's cross-reference to Article I, which does not list the Non-contracting Plaintiffs; and (3) the Exhibit 1 provision that gives STP the sole responsibility for payments to third parties. MTD at 12. Defendants also challenge the provisions and documents to which Plaintiffs contend (in their FAC) confer the non-contracting Plaintiffs TPB status— paragraph 12 of the Letter Agreement, the inducement letters, and the provisions in the Letter Agreement that call for their services. *Id.* at 12–14.

"Under California law, a 'contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it.'" *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th cir. 2010) (quoting Cal. Civ. Code § 1559). "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Id.* (quoting *Karo v. San Diego symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985)). For example, where the contract "satisf[ies] an obligation of the promisee to pay money to the beneficiary," there is a third party contract. *Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144, 1152 (9th Cir. 2016) (quoting *Med. Staff of Doctors Med. Ctr. in Modesto v. Kamil*, 132 Cal. App. 4th 679 (2005)). "Whether the third party is an intended beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1233 (2004). This determination is generally a question of fact "ill-suited to resolution at the motion to dismiss stage." *Bozzio*, 811 F.3d at 1153.

Case 2:16-cv-07733-DMG-AS   Document 32   Filed 09/28/17   Page 7 of 11   Page ID #:375

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.   **CV 16-7733-DMG (ASx)**                                          Date   September 28, 2017

Title   *Century of Progress Productions v. Vivendi S.A., et al.*             Page   7 of 11

        **a.**    **Guest is an intended third-party beneficiary.**

Although Exhibit B contains an express no-TPB provision, paragraph 7.03 is in tension with the import of the 1982 Agreement and the Letter Agreement's specific terms. The Letter Agreement expressly provides for payments—in fixed, deferred, and contingent compensation—to Guest, Reiner, McKean, and Shearer (the "Co-creators"). Letter Agreement at ¶ 4. In fact, the Letter Agreement provides for this payment "[n]otwithstanding anything to the contrary in Exhibit B." *Id.* at 6. This is "a classic third party provision" that "expressly benefits [the Co-creators] and only them." *Prouty*, 121 Cal. App. 4th at 184; *see also Bozzio*, 811 F.3d at 1152–53 (grant of dismissal improper where agreement signed by plaintiff artist's loan-out company stated she "would incur obligations and receive benefits" and "contemplate[d] royalty payments to" her); *Clinton v. Universal Music Grp., Inc.*, No. CV 07-672 PSG (JWJx), 2007 U.S. Dist. LEXIS 102806, at *12–16 (C.D. Cal. July 30, 2007) (plaintiff artist, whose loan-out company entered into agreement with defendant recording companies, was real party in interest because "essence" of agreement pertained to plaintiff's services, letter of inducement mentioned plaintiff's benefits and obligations to perform under the agreement; and plaintiff may also have qualified as TPB because of the agreement's provision of royalties for her services). The fact that the compensation provisions state that Embassy will pay STP—so that STP will distribute the funds to the Co-creators—has no bearing on their beneficiary status. *See* MTD at 13–14. The dispositive question is whether "the circumstances [of the 1982 Agreement] indicate the promisee intends to give the beneficiary the benefit of the promised performance." *Bozzio*, 811 F.3d at 1152 (quoting *Kamil*, 132 Cal. App. 4th 679). Here, the circumstances do so indicate with regard to the Co-creators.

Elsewhere throughout the 1982 Agreement are several provisions expressly benefitting the Co-creators. *See, e.g.*, Letter Agreement at ¶ 6 (royalties from music). As Plaintiffs point out, the Letter Agreement specifically states that when inconsistencies between the Letter Agreement and Exhibit B arise, the Letter Agreement controls. Opposition at 12 (citing Letter Agreement at ¶ 13); *see also* Letter Agreement at 1 ("The eleven page letter agreement dated May 7, 1982 [the Letter Agreement], preceeding the inducement letters and the exhibits, *contains the essence of the deal*." (emphasis added)). Furthermore, "well established principles of contract interpretation" under California law direct that "when a general and a particular provision are inconsistent, the particular and specific provision is paramount." *Prouty*, 121 Cal. App. 4th at 1235. Here, the particular provisions of the 1982 Agreement overwhelmingly indicate, in contraindication of the general no-TPB provision, an intent to form a TPB contract in favor of Co-creators.[5]

---

[5] In their MTD, Defendants appear to confuse the question of whether the 1982 Agreement was made for the benefit of the Non-contracting Plaintiffs with the question of whether Embassy and STP, as the contracting parties, intended for the Non-contracting Plaintiffs to have the right to bring suit. *See* MTD at 13–14. Although California law specifies that TPBs have the inherent right to sue under a contract entered into for their benefit, that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7733-DMG (ASx)** | Date | September 28, 2017 |
|---|---|---|---|
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 8 of 11 |

      Finally, assuming *arguendo* that the Letter Agreement and Exhibit B do not conflict, the no-TPB provision's cross-reference to Article I results in the same conclusion. The Letter Agreement defines the Co-creators as "the 'Actors'" and "the 'Screenplay Writers,'" and proceeds almost exclusively to use the defined terms when referencing the Co-creators throughout its remainder. Letter Agreement at ¶ 2(a). Although Article I leaves blank the identification of "Screenplay Writers" in its list of "principal elements," Screenplay Writers denote the Co-creators. Exhibit A at 21. That Article I lists "Producer" as the "Production Company" in the same list is of no moment. *Id.* at 22. Nowhere does Exhibit B define Producer as STP. *See* Exhibit A at 21 ("This Agreement, dated [blank], 198[blank], is entered into by and between [blank], with a place of business at [blank] (the "Producer") and Embassy Pictures . . . ("Embassy")."). Accordingly, it appears that "Producer" imports the meaning from the Letter Agreement where it is first defined. *See* Exhibit A at 2. Construing this in the light most favorable to Plaintiffs, as the Court must for the purpose of deciding the MTD, STP and Embassy intended for "Screenplay Writers" to retain its originally defined meaning, and the Co-creators are therefore exempt from the no-TPB provision's operation.

      Although the TPB inquiry is usually a factual one inappropriate for resolution at the motion to dismiss stage, based on the limited submissions currently before the Court and the standard applicable to motions to dismiss, the Court concludes that the Co-creators are intended TPBs of the 1982 Agreement.[6] Accordingly, the Court **DENIES** the MTD insofar as it seeks the dismissal of Guest on the basis that he is not a TPB.

### b.     CCP, RRP, and UH are not intended third-party beneficiaries.

      This does not end the contractual standing inquiry, however, because among the Co-creators, only Guest is a party, and the remaining Non-contracting Plaintiffs are not TIST Co-creators. Plaintiffs point to the Inducement Letters and paragraphs 12 and 13 of the Letter Agreement, and contend that they evince the requisite intent to confer TPB status on CCP, RRP, and UH. FAC at ¶ 31; Opposition at 8. The Court disagrees.

      First, the Non-contracting Plaintiffs' ownership interests in STP, established in the Inducement Letters and paragraph 12 of the Letter Agreement, do not confer upon them or otherwise establish their TPB status. *See Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811,

---

inquiry is separate from whether TPBs have *waived* such right. Some of Defendants' arguments for dismissal, asserted as grounds for the Non-contracting Plaintiffs' non-TPB status, are more appropriately considered as arguments in favor of an express or implied waiver. *E.g.*, MTD at 12 (Exhibit 1 argument); Reply at 10 (same).

     [6] This conclusion shall not preclude Defendants from developing an evidentiary record that may establish the contrary as a matter of law or give rise to a triable issue of material fact.

Case 2:16-cv-07733-DMG-AS   Document 32   Filed 09/28/17   Page 9 of 11   Page ID #:377

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733-DMG (ASx) | Date | September 28, 2017 |
|---|---|---|---|
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 9 of 11 |

1815 (1995) (where corporation is party to a contract that is subsequently breached, "[t]he remedy lies with the corporation, not the shareholder, even if the injured shareholder is the sole shareholder"). Nor does the plain language of the Inducement Letters do so. Rather, the Inducement Letters provide that RRP, CCP, and UH are obligated to perform services—not receive rights or other benefits. *See* Exhibit A at 13, 15, 17. Although paragraph 13 of the Letter Agreement provides some evidence of an intent to benefit the Non-contracting loan-out company Plaintiffs, it is well established that "[a] third party who is only incidentally benefited by performance of a contract is not entitled to enforce it." *Prouty*, 121 Cal. App. 4th at 1233 (quoting *E. Aviation Grp., Inc. v. Airborne Express, Inc.*, 6 Cal. App. 4th 1448, 1452 (1992)). Moreover, unlike the situation with the Co-creators, the express no-TPB provision in Exhibit B does not conflict with the rest of the 1982 Agreement's plain language insofar as the Non-contracting loan-out company Plaintiffs are concerned.

Finally, Plaintiffs have cited no authority that holds that a non-contracting loan-out company that is a signatory to a multi-level inducement letter, which ultimately pertains to the non-contracting individual artist's rights and obligations under the main services agreement, is an intended TPB of the main services agreement. Rather, the case law cited by Plaintiffs discuss the individual artist's TPB status when his or her loan-out company is the party to the main services agreement. *See* Opposition at 11–12 (collecting cases that establish that "individual artists have standing to sue to recover unpaid royalties as third-party beneficiaries of a contract signed by their loan-out companies").

Although the TPB inquiry is generally ill-suited to resolution at this stage of litigation, where the pleadings and submissions before the Court demonstrate no support for the finding of intended TPB status, dismissal is appropriate. *See Balsam*, 627 F.3d at 1161–63. Accordingly, the MTD is **GRANTED** insofar as Defendants seek dismissal of CCP, RRP, and UH in connection with the causes of action for breach of contract, breach of the implied covenant, and accounting. Because Plaintiffs may wish to add the Co-creators as parties or there may be other facts, such as circumstances surrounding the 1982 Agreement's negotiation or other facts not alleged here, that would tend to show STP and Embassy's intent to confer benefits onto CCP, RRP, and UH, this dismissal is with leave to amend.

    2.    **Waiver**

Because the Court has concluded that Guest is an intended TPB of the 1982 Agreement, the Court turns to the question of whether he waived his right to sue. "Courts will find a waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Clinton*, 2007 U.S. Dist. LEXIS 102806 at *17–18 (quoting *Intel Corp. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 16-7733-DMG (ASx) | Date | September 28, 2017 |
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 10 of 11 |

*Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991)). "Under California law, waiver is a question of fact." *Id.* (quoting *Intel*, 952 F.2d at 1559).

Defendants contend that Guest waived his right to sue through the Inducement Letter's clause that he "shall look solely" to STP for "any and all" compensation owed to him. Exhibit A at 19. They also point to Exhibit 1's language that STP is "solely responsible . . . for the payment of any sums" owed to him. Exhibit A at 81. Plaintiffs counter that this language was intended to "prohibit[] the Co-[c]reators from suing Embassy if there was an internal dispute among the individual artists over the internal allocation and distribution of royalties that had been properly accounted for and paid by Embassy to STP." Opposition at 13–14 (citing *Bozzio*, 811 F.3d at 1153). As the Ninth Circuit recently concluded when it considered this identical argument in the context of similar "look solely" language in an inducement letter, "[n]othing . . . forecloses [Plaintiffs'] reading of this contract language." *Bozzio*, 811 F.3d at 1153. Further, on the pleadings alone, the Court cannot resolve this factual inquiry. *Id.* The Court therefore **DENIES** the MTD insofar as it seeks dismissal of Guest's contract-based claims on the basis of waiver.

**B.     Fraud**

Defendants seek dismissal of the cause of action for fraud in its entirety on four grounds: (1) the Non-contracting Plaintiffs lack standing to bring a fraud claim based on the 1982 Agreement, on the ground that those Plaintiffs lack standing to sue in contract, MTD at 15–17; (2) STP's cause of action for fraud is "functionally identical to the contract claim," and California law prohibits recovery in tort for breach of contractual obligations, *id.* at 17; (3) the FAC fails to allege fraud with the required particularity of Federal Rule of Civil Procedure 9(b), *Id.* at 19; and (4) the only portion of the fraud claim that is pled with the requisite particularity is time-barred, *id.* at 19–20. Because the FAC does not satisfy Rule 9(b)'s heightened pleading standards, the Court need not address Defendants' remaining challenges.

As asserted in the FAC, the fraud cause of action is based on Defendants' wrongful accounting practices and revenue collection[7] despite Halperin's "repeated[] assur[ances]" that Defendants were "fully complying with the [1982 Agreement], providing accurate and reliable accountings to Plaintiffs, and using all available means to promote [TIST] assets and enforce [TIST] intellectual property to maximize revenue for the [TIST] creators." FAC at ¶¶ 40–41. Plaintiffs relied on these statements and learned in November 2013 and after October 2016 that Defendants had actually "willfully concealed and manipulated years of accountings to retain

---

[7] As Plaintiffs point out in their Opposition, Halperin's statements and conduct in 2000 as to the assignment of a distributor do not form the basis of the cause of action for fraud. Opposition at 21 & n.4; FAC at ¶ 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-7733-DMG (ASx)** | Date | September 28, 2017 |
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 11 of 11 |

monies due and owing to Plaintiffs," examples of which Plaintiffs provide in bullet list form. *Id.* at ¶¶ 39–41.

Under California law, the elements for fraud are (1) false representation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Although Plaintiffs have vaguely alleged the elements of a fraud claim, they have failed to plead sufficient facts. For example, the FAC states that Halperin made broad assurances of agreement compliance to "Plaintiffs' manager at the time, Harriet Steinberg," "during [Halperin's] management of the exploitation of TIST." FAC at ¶ 41. Plaintiffs fail to specify when Steinberg managed them and when Halperin managed the exploitation of TIST. Additionally, the FAC does not provide where these statements occurred or allege any representative examples of specific statements Halperin made. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1170 (C.D. Cal. 2010) ("A plaintiff must allege particular facts explaining the circumstances of the fraud, 'including time, place, persons, statements made[,] and an explanation of how or why such statements are false or misleading.'" (alteration in original) (quoting *Baggett v. Hewlett–Packard Co.*, 582 F.Supp.2d 1261, 1265 (C.D.Cal.2007))).

Accordingly, Plaintiffs have failed to adequately state a fraud claim, and the Court **GRANTS** the MTD, with leave to amend.

## IV.
## CONCLUSION

In light of the foregoing, Defendants' MTD is **GRANTED in part** with leave to amend and **DENIED IN PART**. Plaintiffs shall file an amended complaint, or inform the Court and Defendants that they do not intend to amend, within 21 days from the date of this Order. Defendants shall file their response within 21 days after the filing and service of the amended complaint or notification that no amended complaint will be filed.

**IT IS SO ORDERED.**