UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7733 DMG (ASx)** | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 1 of 22 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTIONS TO DISMISS [44, 49]**

Plaintiffs, Century of Progress Productions ("CPP"), Christopher Guest, Rob Reiner Productions ("RRP"), United Heathen ("UH"), Spinal Tap Productions ("STP"), Harry Shearer, Rob Reiner, and Michael McKean, filed the operative second amended complaint ("SAC") on October 19, 2017. [Doc. # 33.] The SAC alleges six causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud by concealment and misrepresentation; (4) accounting; (5) declaratory relief as to alleged trademark rights, 28 U.S.C. § 2201; and (6) declaratory relief as to alleged copyright reversion, 17 U.S.C § 703. *Id.* at 1 (caption).

Now before the Court are two motions to dismiss. The first, brought by Defendants Universal Music Group, Inc. and UMG Recordings, Inc. (collectively, "UMG"), seeks to dismiss Plaintiffs' SAC in its entirety, as alleged against UMG.[1] [Doc. # 44 ("UMG MTD").] The second, brought by Defendants Vivendi S.A.'s ("Vivendi"), Studiocanal S.A.S.' ("Studiocanal"), and Ron Halpern (collectively, "Studiocanal Defendants"), seeks dismissal of Plaintiffs' claim for fraud. [Doc. # 49 ("Studiocanal MTD").] UMG joins in the Studiocanal MTD. *See* UMG MTD at 17 n.8.[2]

---

[1] The UMG parties are newly joined defendants who were not parties to the action until the SAC's filing. Although, like Plaintiffs, they are alleged California citizens and would therefore defeat diversity jurisdiction, this Court has subject matter jurisdiction over the action by virtue of Plaintiffs' causes of action for declaratory relief under the federal Copyright Act. *See* 28 U.S.C. § 1338; SAC at ¶¶ 24–28.

[2] The Court's citations to the parties' moving papers refers to the page numbers assigned by the CM/ECF docketing system, not those assigned by the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 2 of 22 |
|---|---|---|---|

# I.
# FACTUAL BACKGROUND[3]

## A.    The Parties and *This Is Spinal Tap*

This lawsuit concerns the motion picture *This Is Spinal Tap* ("TIST") and the rights of its creators and performers.  In the late 1970s, Plaintiffs Harry Shearer, Christopher Guest, Rob Reiner, and Michael McKean (collectively, "Co-creators") created characters and wrote several songs for a fictional British rock band, Spinal Tap, which first appeared on television in 1979 in a skit series called *The T.V. Show*.  *See* SAC at ¶¶ 6, 38.  Co-creators later decided to make a full-length motion picture about the band, but they first wrote a 20-minute film "complete with fully-realized characters with backstories and musical performances with lyrics, to shop in lieu of a script."  *Id.* at ¶¶ 6, 38.  TIST, Co-creators' eventual motion picture, was filmed as a documentary about the fictional British rock band in the middle of an American tour, and it was released in 1984. *Id.* at ¶ 40.

Co-creators also starred in or directed TIST.  *Id.* at ¶¶ 14–17.  Plaintiff CPP is Shearer's loan-out company, Plaintiff RRP is Reiner's loan-out company, and Plaintiff UH is McKean's loan-out company (collectively, the "Loan-Out Companies").  *Id.* at ¶ 24, 26–27.[4]  Plaintiff STP is a California corporation that, at all relevant times, was entirely owned by CPP, Guest, RRP, and UH.  *Id.* at ¶ 28.

Guest, CCP, RRP, and UH formed and incorporated STP on May 6, 1982 to turn Co-creators' short film into the feature-length film, TIST.  *Id.* at ¶ 38.  Although STP was dissolved in or around June 1986, it brings this suit under California Corporations Code section 2010 to collect and distribute to its owners all royalties and other monies.  *Id.* at ¶ 28.  Guest is STP's president.  *See id.* at ¶ 30.

---

[3] The Court accepts all factual allegations in the FAC as true solely to decide the motions to dismiss, except where they contradict documents properly subject to the Court's consideration.  For example, the Court also considers, under the incorporation by reference doctrine, the agreement underlying this action, which the SAC expressly references and upon which it relies.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[4] As explained in the September 28, 2017 Order granting in part and denying in part Vivendi's, Studiocanal's, and Halpern's motion to dismiss Plaintiffs' first amended complaint ("MTD Order"), loan-out companies are legally fictitious entities "employed for the financial benefit of successful artists and entertainers . . . [that are] typically wholly owned by an artist."  MTD Order at 1 n.2 [Doc. # 32] (quoting *Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144, 1147 (9th Cir. 2016)).  Their "sole function" is "to 'loan out' the services of the artist-owner to producers and other potential employers" while offering "limited personal liability and beneficial tax treatment."  *Id.* (quoting *Bozzio*, 811 F.3d at 1147).

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 3 of 22 |
|---|---|---|---|

Defendants Studiocanal and UMG are subsidiaries of Defendant Vivendi, a French corporation. *Id.* at ¶¶ 29–30, 32. Defendant Halpern is one of Studiocanal's executives. *Id.* at ¶ 31. In or around 1989, predecessors of Vivendi's subsidiaries acquired pertinent TIST rights. *Id.* at ¶ 49.

### B.     The 1982 Agreement

On May 7, 1982, STP and the Loan-Out Companies entered into a multi-part agreement (the "1982 Agreement") between STP and Embassy Pictures ("Embassy"), an independent studio, for the production, financing, and distribution of TIST. SAC at ¶¶ 7, 38, 43; Ex. A to Studiocanal Defendants' February 28, 2017 Motion to Dismiss ("MTD FAC") at 2–12 ("Letter Agreement") [Doc. # 24-2].[5] The 1982 Agreement consists of several documents, including, as relevant here, an 11-page letter agreement ("Letter Agreement") and a single-page Exhibit A to the Letter Agreement, both of which are discussed below. Guest, as STP's president, signed the Letter Agreement. SAC at ¶ 44; Letter Agreement at 11.

Under the Letter Agreement, Co-creators are pre-approved personnel defined as the "Screenplay Writers" and "Actors," and the Agreement provides for their fixed, deferred, and contingent compensation and other royalties. SAC at ¶¶ 39, 46–47; Letter Agreement at ¶¶ 2(a), 4, 6. Additionally, subject to certain terms and conditions, Embassy shall pay to STP 40% of all net receipts related to the film; to Co-creators 50% of all gross receipts (after deduction of administration costs) from TIST music, a performers' royalty of 6% of retail price of the TIST soundtrack if Co-creators perform on the album, and a producer's royalty of 3% of the retail price of the TIST soundtrack if they are the album's sole producers. SAC ¶ 47; Letter Agreement at ¶¶ 4, 6.

Exhibit A to the Letter Agreement, entitled "Instrument of Transfer," provides that STP, through Co-creators, assigned to Embassy "the following rights . . . in the feature motion picture presently entitled 'Spinal Tap'":

The sole and exclusive right in perpetuity to exhibit, distribute and exploit such motion picture and all elements thereof in all media, whether or not now known, throughout the universe, including, but not limited to, music and soundtrack rights, merchandising rights, video cassette and video disk rights, and theatrical sequel, theatrical remake and standard and non-standard television program rights.

---

[5] Because Exhibit A spans four docket entries [Doc. ## 24-2–24-5], the Court's citations to this exhibit reference the pagination assigned by Studiocanal Defendants, rather than the PDF pagination assigned by CM/ECF.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | | Date | August 28, 2018 |
|---|---|---|---|---|
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | | Page | 4 of 22 |

Ex. A to MTD FAC at 20 ("Instrument of Transfer") [Doc. # 24-2]; SAC at ¶ 8.

The SAC alleges that Embassy's rights under this Instrument of Transfer changed hands "several times," most recently to Studiocanal and UMG.  SAC at ¶ 9.

## C.      Accounting Under the 1982 Agreement

In or around 1989, predecessors of Vivendi's subsidiaries acquired "pertinent TIST rights," and Vivendi became responsible for accounting under the Letter Agreement as a consequence.  *Id.* at ¶¶ 49–50.  Specifically, Plaintiffs allege that Vivendi's subsidiary, Studiocanal, administers and has a duty to account for revenue streams associated with the film, television, video, and merchandising rights to TIST, while another Vivendi subsidiary, UMG, administers and has a duty to account for revenue streams associated with the sound recording rights.  *Id.* at ¶¶ 53, 72.  According to Plaintiffs, UMG has "an obligation to report and pay [Studioc]anal, which in turn has an obligation to report and pay Plaintiffs" in connection with the TIST revenue streams, including sound recordings an music publishing. *Id.* at ¶ 51.

STP allegedly received "[s]ome" profit participation statements.  *Id.* at ¶ 50.  Plaintiffs recently discovered errors in the statements, and they allege that the statements reflect the fraudulent practices engaged in by Defendants.  *See id.* at ¶¶ 51, 52–54.  Vivendi, Studiocanal, and UMG allegedly defrauded Plaintiffs by

> engaging in anti-competitive and unfair self-dealing between Vivendi subsidiaries; cross-collateralizing unsuccessful films bundled with TIST in their accounting; failing to remit accounting statements; failing to respond to inquiries and information requests; failing to keep accurate records; failing to include revenues in accounting statements; claiming undocumented and false expenses . . . ; and failing to diligently exploit available revenue streams.

*Id.* at ¶ 65; *see also id.* at ¶¶ 54, 86, 88 (providing substantive examples of alleged fraudulent accounting practices and misrepresentations).

In November 2013, a CPP-commissioned study showed that Defendants engaged in "willful misconduct" and intentionally concealed material facts in the accounting statements provided to Plaintiffs in order to deceive and prevent them from discovering such practices.  *Id.* at ¶ 52.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 5 of 22 |
|---|---|---|---|

**D.    Plaintiffs Serve Copyright Termination Notices**

After initiating suit in October 2016, Plaintiffs exercised their rights under section 203 of the Copyright Act to issue copyright termination notices to recapture all copyrights to the characters, sound recordings, and musical compositions that appeared in TIST. *Id.* at ¶¶ 2, 114; Exs. 6–9 to SAC [Doc. # 33-6–33-9].  Plaintiffs served the termination notices on Studiocanal and UMG, and recorded them in the U.S. Copyright Office.  SAC at ¶ 114.  Those served on Studiocanal concern the TIST motion picture and musical composition copyrights, whereas those served on UMG concern the sound recording copyrights.  *See* Ex. 6 to SAC at 2–7.

After receiving Plaintiffs' termination notices, Vivendi and Studiocanal threatened to file a counterclaim for declaratory relief to "confirm that Mr. Shearer has no termination rights" because the TIST works are "works for hire."  Defs' February 28, 2017 Mot. to Dismiss at 9 [Doc. # 24]; SAC at ¶ 3.  Plaintiffs dispute the "works for hire" argument, and the SAC alleges a cause of action for declaratory relief in connection with the validity of Plaintiffs' termination notices.  *See* SAC at ¶¶ 10–13, 109–17.

**E.    Alleged Damages**

CCP and Shearer learned of Defendants' misconduct in November 2013, and remaining Plaintiffs learned of such conduct only after this suit's initial filing in October 2016.  *Id.* at ¶57.

Plaintiffs contend that Defendants' fraudulent conduct has caused distinct harm, separate and in addition to that which Defendants' contractual misconduct created, such as "the out-of-pocket expenses incurred to commission the 2013 [CPP] study to discover Defendants' fraud[] [and] the lost time-value of money and interest on the monies wrongfully withheld from Plaintiffs."  *Id.* at ¶ 92.  Had Defendants disclosed the aforementioned concealed material facts, Plaintiffs would have shifted, or attempted to shift, control of the exploitation, recovery, and enforcement of TIST assets, including its intellectual property, away from Vivendi many years ago.  *Id.* at ¶ 91.  Plaintiffs also contend that the alleged fraudulent accounting practices have resulted in a negative balance on the profit participation statements, such that Defendants insist Plaintiffs owe them money in connection with TIST royalties.  *See id.* at ¶ 22.

## II.
## LEGAL STANDARD

The Court set forth the applicable standard for motions to dismiss in its prior order and need not repeat it here.  MTD Order at 5 [Doc. # 32].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | | Date | August 28, 2018 |
|---|---|---|---|---|
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | | Page | 6 of 22 |

### III.
### DISCUSSION

UMG moves to dismiss each of Plaintiffs' alleged claims except for that seeking declaratory relief in connection with their trademark rights. UMG contends that Plaintiffs fail to state a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, and accounting because there is no contractual relationship between Plaintiffs and UMG. UMG and Studiocanal seek dismissal of the cause of action for fraud based on Plaintiffs' purported failure to plead sufficient facts. Finally, UMG argues the declaratory relief claim related to copyright reversion is not a ripe controversy. The Court first considers Plaintiffs' causes of action for breach and accounting.

**A.     Causes of Action for Breach and Accounting (Against UMG)**

UMG argues that Plaintiffs cannot allege any claim for breach or for an accounting in connection with the 1982 Agreement because UMG is not a party to that agreement, nor is it a successor-in-interest to Embassy. Rather, says UMG, Studiocanal is the admitted successor to Embassy's rights and obligations under the 1982 Agreement and therefore the sole party responsible for the obligations owed under that contract. *See* Ex. 6 to SAC ("Termination Notices") at 6 [Doc. # 33-6] (listing Studiocanal "as successor-in-interest to Embassy" and UMG "as successor-in-interest to PolyGram Records," a party unmentioned anywhere in the operative complaint). Plaintiffs respond that they have sufficiently alleged a contractual relationship.

**1.     Sufficiency of the Pleadings**

The SAC contains the following relevant allegations:  (1) Embassy's rights in Co-creators' copyrights under the 1982 Agreement "changed hands," eventually to UMG; (2) UMG is a Vivendi subsidiary, and it accordingly acquired "pertinent" TIST rights; (3) UMG, "through [its] predecessor-in-interest Embassy, entered into" the 1982 Agreement and is obligated to provide accounting services related to UMG soundtrack music rights thereunder; (4) UMG "has an obligation to report and pay [sound recording revenue streams arising from TIST] [to] [Studioc]anal, which in turn has an obligation to report and pay Plaintiffs;" and (5) UMG is a "successor[]-in-interest to Embassy's rights" under the 1982 Agreement. SAC ¶¶ 9, 21, 32 49, 51, 53, 72, 113.[6]  Although the SAC clearly pleads that UMG is a successor or assignee of Embassy's rights and obligations, it does not necessarily follow that UMG will be liable under the 1982 Agreement.

---

[6] UMG also argues that the SAC's allegations directly contradict Plaintiffs' contention that UMG is bound by the Letter Agreement because the complaint alleges that "Vivendi," not UMG, "is Embassy's successor-in-interest."  UMG MTD at 14 (quoting SAC at ¶ 48).  Plaintiffs define the term "Vivendi," however, to include "Vivendi and its subsidiaries, including . . . [UMG]."  SAC at ¶ 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7733 DMG (ASx)** | | Date | August 28, 2018 |
|---|---|---|---|---|

| Title | ***Century of Progress Productions v. Vivendi S.A., et al.*** | | Page | 7 of 22 |
|---|---|---|---|---|

In California, the "general rule" of successor liability is that

> a corporation purchasing the principal assets of another corporation . . . does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

*Daniels v. Select Portfolio Serv., Inc.*, 246 Cal. App. 4th 1150, 1170 (2016) (alteration in original) (quoting *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977)). Similarly, the "general rule" for assignee liability under California law is that "the mere assignment of rights under an executory contract does not cast upon the assignee the obligations imposed by the contract upon the assignor." *Id.* (quoting *Enter. Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 745 (1991)). "In order for an assignment to obligate the assignee on a contract, there must be either an express assumption of the contract or an acceptance of the benefits of the contract (from which an assumption of the burdens is presumed)." *Wilson's Heating & Air Conditioning v. Wells Fargo Bank*, 202 Cal. App. 3d 1326, 1334 (1988); *see also* Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.").

Thus, absent these well-delineated exceptions, UMG, as a successor-in-interest to Embassy or assignee of Embassy's rights and obligations, is not liable under the 1982 Agreement. As explained below, Plaintiffs have not sufficiently alleged any of these exceptions.

The SAC nowhere alleges the existence of an express or implied agreement involving UMG that gives rise to UMG's assumption of Embassy's obligations, under either a successor or an assignee theory. Instead, Plaintiffs allege in a conclusory fashion that UMG has assumed such rights and obligations. *See Gerritsen v. Warner Bros Entm't Inc.* ("*Gerritsen II*"), 116 F. Supp. 3d 1104, 1127 (C.D. Cal. 2015) (plaintiff "must not only plead the existence of an assumption of liability but either the terms of that assumption of liability (if express) or the factual circumstances giving rise to an assumption of liability (if implied)" to establish successor liability under an assumption theory (quoting *No Cost Conference, Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1300 (S.D. Cal. 2013))). Nor do Plaintiffs allege any mergers, effective or actual, or any fraudulent asset transfers with respect to UMG and Embassy or any of Embassy's successors. *See* SAC at ¶¶ 68, 102 (allegations of merger with respect to StudioCanal); Ex. 2 to SAC (USPTO form and other papers reference merger between "Canal + D.A." and "Studiocanal Image").

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 8 of 22 |
|---|---|---|---|

The SAC also lacks any allegations that UMG, as successor-in-interest, is a "mere continuation" of Embassy. *See Gerritsen II*, 116 F. Supp. 3d at 1133 ("[T]o prevail on [a 'mere continuation'] theory, plaintiff [must] demonstrate [that] '(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; [and that] (2) one or more persons were officers, directors, or stockholders of both corporations.'" (quoting *CenterPoint Energy, Inc. v. Superior Court*, 157 Cal. App. 4th 1101, 1120 (2007))). Plaintiffs allege that Vivendi and its subsidiaries, including UMG, have the same interests and have abused the corporate form, and that Vivendi "exercises direct control" over its subsidiaries, but these allegations are insufficient to bind UMG to *Embassy*'s 1982 Agreement obligations under a successor theory, particularly where Studiocanal—not Vivendi— is Embassy's successor-in-interest. SAC at ¶¶ 64–66. Insofar as Plaintiffs intended to allege liability under an alter ego theory, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim." *Gerritsen II*, 116 F. Supp. 3d at 1136. In any event, it is not clear that alter ego is a "viable theory upon which to seek relief from" UMG for the reasons stated in *Gerritsen II*. *See id.* at 1135 n.194.

The SAC alleges in one paragraph that UMG "has an obligation to report and pay [Studioc]anal, which in turn has an obligation to report and pay Plaintiffs," which suggests third-party-beneficiary status. SAC at ¶ 51. Yet, "it is not enough that the third party would incidentally have benefited from performance," and the SAC does not allege even the existence of a third-party-beneficiary contract. *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1021 (2009); *see also Cal. Civ. Code* § 1559 ("A contract, *made expressly for the benefit of a third person*, may be enforced by him at any time before the parties thereto rescind it." (emphasis added)); *H.N. & Frances C. Berger Found. V. Perez*, 218 Cal. App. 4th 37, 43 (2013) ("Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary 'must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary.'" (quoting *Schauer v. Mandarin Gems of Cal, Inc.*, 125 Cal. App. 4th 949, 957 (2005))).

Although the Opposition introduces new facts in support of Plaintiffs' claims for breach and accounting, the SAC is the operative pleading, and the allegations therein fail to give rise to either claim. *See Gerritsen v. Warner Bros. Entm't Inc.* ("*Gerritsen I*"), 112 F. Supp. 3d 1011, 1033 n.93 (C.D. Cal. 2015) ("In deciding a motion to dismiss, courts may not 'take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under [Federal] Rule [of Civil Procedure] 7(a).'" (quoting *In re Turbodyne Techs., Inc. Sec. Litig.*, No. CV 99-00697 MMM (BQRx), 2000 WL 33961193, at *10 (C.D. Cal. Mar. 15, 2000))); *see also Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000) ("The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 9 of 22 |
|---|---|---|---|

receive the *benefits of the agreement actually made.* The covenant thus cannot 'be endowed with an existence independent of its contractual underpinnings.'" (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995))); *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013) ("A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting . . . ." (quoting *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009))).

The Court therefore **GRANTS** the UMG MTD with respect to the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and accounting.

### 2.      Leave to Amend

To determine whether leave to amend should be granted, the Court next considers, to the extent possible, the Opposition's three theories of UMG's liability under the 1982 Agreement, which are completely absent from the SAC. First, the Court addresses Plaintiffs' argument about a merger between UMG and non-party MCA Records, Inc. ("MCA").

### a.      UMG–MCA Merger

Plaintiffs point to the 1999 merger of UMG and MCA, which purportedly gave rise to UMG's obligations under an agreement between MCA and Pairapance Communications, Inc. (which also binds McKean, Guest, and Shearer). Opp'n at 23–24 & n.4 [Doc. # 51]; *see* Ex. B to Humphreys Decl. ("MCA Agreement") [Doc. # 51-3]; Ex. C to Humphreys Decl. [Doc. # 51-4] (UMG–MCA merger documents). The MCA Agreement and subsequent UMG–MCA merger may impose upon UMG certain obligations under that contract, but such obligations (and any potential liability for breach thereof) appear independent of those resulting from the 1982 Agreement, even though the MCA Agreement concerns the Spinal Tap band. *See* MCA Agreement.

Despite this, the Court cannot say conclusively that leave to amend would be futile because all of the relevant facts are unknown to the Court at this time. Accordingly, the Court will grant Plaintiffs leave to file an amended pleading that alleges UMG's obligations under the MCA Agreement insofar as those obligations are relevant to the 1982 Agreement.[7]

---

[7] Although the Court will grant leave to amend in connection with this theory, the Court cautions Plaintiffs to exercise care. It is not clear that any cause of action for breach brought by Plaintiffs against UMG in connection with the MCA Agreement should be heard in this Court given Plaintiffs' and UMG's California citizenship, the state law nature of the claim, and the apparently distinct facts that give rise to the copyright reversion claim versus breach of the MCA Agreement. *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction appropriate where the state and federal claims "form part of the same case or controversy"); *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 725

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 10 of 22 |
|---|---|---|---|

b.      **UMG–Polygram Agreement**

Plaintiffs next contend that an agreement between Embassy and Polygram Records ("Polygram"), UMG's predecessor-in-interest,[8] imposes upon UMG the contractual obligation to collect and report to Embassy (now Studiocanal) the sound recording revenues associated with TIST (the "Polygram Agreement"), so that Studiocanal can comply with its accounting obligations under the 1982 Agreement.  Thus, say Plaintiffs, UMG accepted benefits of the 1982 Agreement, including ownership of the TIST sound recording copyrights, and therefore is required by law to accept the obligations thereunder.  Opp'n at 24; *see* Cal. Civ. Code § 1589.

Plaintiffs do not allege this theory anywhere in the SAC, and neither side has presented the Polygram Agreement to the Court in support of their Opposition or Reply despite their briefs' argument over the agreement's relevance.  Thus, the Court cannot determine, for the purpose of deciding whether to grant leave to amend, whether UMG assumed any obligations under the 1982 Agreement by virtue of the Polygram Agreement.  *See Recorded Picture Co. v. Nelson Entm't, Inc.*, 53 Cal. App. 4th 350, 362 (1997) ("[W]hether there has been an assumption of the obligations is to be determined by the intent of the parties as indicated by their acts, the subject matter of the contract or their words." (alteration in original) (quoting *Shugart*, 231 Cal. App. 3d at 745)).

Additionally, it is not clear that the Polygram Agreement can support Plaintiffs' breach claims in connection with the 1982 Agreement under an assignment theory.  For section 1589 to apply and burden the assignee with the contract's obligations, the assignee must have accepted "*all* the benefits of a full performance."  *Id.* (quoting *Fruitvale Canning Co. v. Cotton*, 115 Cal. App. 2d 622, 626 (1953)).  According to the Opposition, UMG (through Polygram) received ownership of only the sound recording copyrights, while, according to the SAC, Studiocanal (through Embassy) has retained ownership of the remaining copyrights associated with the film.  If this is the case, UMG is not an assignee of the 1982 Agreement, and it did not accept or receive all of the 1982 Agreement's benefits.  *See id.* at 362–63 (where sub-distributor, under a separate contract with distributor, received only partial benefits of producer–distributor contract, sub-distributor was a licensee and not an assignee and section 1589 did not apply to burden sub-distributor with distributor's contractual obligations); *see also id.* at 363 ("We decline to adopt the rule proposed by the [plaintiff] producers—that a company must comply with a contract to which it is not a party if it has accepted even a portion of the benefits of that contract through a

---

(1966) ("The state and federal claims must derive from a common nucleus of operative fact."); *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (same).

[8] Neither side explains how UMG is the successor-in-interest to Polygram, but both sides seem to agree on this fact.  *See, e.g.*, UMG MTD at 10; Opp'n at 23–24; UMG Reply at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 11 of 22 |
|---|---|---|---|

subsequent, separate agreement with one of the original contracting parties.  Such a rule would lead to absurd consequences.").

The Court recognizes nonetheless that because the SAC does not allege the circumstances of the Polygram Agreement, such as Polygram's knowledge of the 1982 Agreement or that agreement's terms, amendment to pursue an assignee theory of liability may not be futile.  *See In re Pajaro Dunes Rental Agency, Inc.*, No. 97CV2516, 2001 WL 1743285, at *8 (N.D. Cal. Nov. 1, 2001), *aff'd sub nom. Pajaro Dunes Rental Agency, Inc. v. Pajaro Dunes Ass'n*, 73 F. App'x 953 (9th Cir. 2003) (section 1589's rule applied even though the alleged assignee, Pajaro Dunes Rental Agency, did not obtain all benefits under the original contract).

### c.    Third-Party Beneficiary

Finally, Plaintiffs argue in opposition that UMG is liable to Plaintiffs as third-party beneficiaries of the Polygram Agreement.  As explained above, however, Plaintiffs do not allege the existence of a third-party agreement, between UMG and Polygram or otherwise.  Absent allegations about the Polygram Agreement or other facts surrounding that agreement, the Court cannot determine UMG's potential liability under such a theory.

In light of Plaintiffs' argument that the Polygram Agreement requires UMG to collect and report to Studiocanal the TIST sound recording revenues so that Studiocanal may provide the required accounting to Plaintiffs, amending the complaint does not appear futile.  The Court therefore **GRANTS** Plaintiffs leave to amend to cure the deficiencies identified in this Order with respect to Plaintiffs' breach and accounting claims against UMG, if possible.

## B.    Cause of Action for Fraud (Against UMG and Studiocanal Defendants)

Studiocanal and UMG seek dismissal of the cause of action for fraud in its entirety based on the economic loss rule.  UMG also moves to dismiss the cause of action for fraud on two additional grounds:  (1) the SAC contains no allegations that UMG made knowingly false representations or concealed material fact by UMG; and (2) there are insufficient facts for the Court to reasonably infer that Studiocanal employees acted as agents of UMG.

Because both sets of moving defendants argue that the economic loss rule applies to bar Plaintiffs' alleged fraud claim, the Court considers this ground for dismissal first.  Then, if necessary, the Court considers the sufficiency of Plaintiffs' allegations of fraud.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | | Date | August 28, 2018 |
|---|---|---|---|---|
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | | Page | 12 of 22 |

### 1.    Economic Loss Rule

Defendants assert that the economic loss rule bars Plaintiffs' cause of action for fraud because the alleged claim "arises from defendants' performance (or lack thereof) under the [1982] Agreement and nothing more," and because "[P]laintiffs have not alleged exposure to personal injuries" or "the breach of a duty distinct from the [1982 Agreement] or a harm distinct from the damages that flow from a breach" thereof. Studiocanal MTD at 3; Studiocanal Reply at 1. Plaintiffs counter that the intentional tort and special relationship exceptions to the economic loss rule apply and that policy concerns weigh in favor of permitting the breach and tort claims to proceed simultaneously. First, the Court provides background on the economic loss rule. Then it considers the proper application of the exceptions raised by Plaintiffs. Ultimately, the Court concludes that the economic loss rule does not apply to bar, as a matter of law, Plaintiff's cause of action for fraud.

### a.    Economic Loss Rule and Its Exceptions

"[T]he economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007); *see also Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (economic loss rule "prevents the law of contract and the law of tort from dissolving one into the other"). Under the rule, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations. Instead, '[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies.'" *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) (second alteration in original) (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999)), *superseded by statute on other grounds as stated in McMillin Albany LLC v. Superior Court*, 4 Cal. 5th 241 (2018).

As many courts have observed, "the economic loss rule is easy to state, [but] the rule's application and exceptions are more conceptually difficult," particularly "[w]hen applied in cases outside the product liability context." *Giles*, 494 F.3d at 874; *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009). Outside of the product liability context, "California's economic loss rule has a . . . category of exceptions for breach of a noncontractual duty" that "require the breach of a tort duty apart from the duty not to act negligently." *United Guaranty*, 660 F. Supp. 2d at 1181; *see also Applied Equipment Corp. v. Litton Saudi Arabai Ltd.*, 7 Cal. 4th 503, 515 (1994) ("The law imposes the obligation that 'every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights.' This duty is independent of the contract." (quoting Cal. Civ. Code § 1708; *Jones v. Kelly*, 208 Cal. 21, 255 (1929))). The economic loss rule exceptions arise, as relevant here, where the alleged misconduct "breaches a duty imposed by some types of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7733 DMG (ASx)** | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 13 of 22 |
|---|---|---|---|

'special' or 'confidential' relationships" or "breaches a 'duty' not to commit certain intentional torts." *United Guaranty*, 660 F. Supp. 2d at 1181.

In addition to the independent duty requirement, the economic loss rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988; *see also Giles*, 494 F.3d at 876–77 ("Where [tort claims beyond negligence and strict liability] have been barred, they have usually amounted to nothing more than a failure to perform a promise contained in a contract. In such cases, the plaintiff has been held to be entitled only to ordinary contract damages. For example, if the tort alleged is intentional or fraudulent misrepresentation by a seller to a buyer, but the misrepresentation only goes to the quality or quantity of the goods promised in the contract, some courts limit the buyer to contract remedies[.]" (collecting cases)).

The foreseeability of the alleged harm and the parties' reasonable contractual expectations are essential to that inquiry. *See Erlich*, 21 Cal. 4th at 550 ("Contract damages are generally limited to those *within the contemplation of the parties* when the contract was entered into or *at least reasonably foreseeable by them* at that time. . . . In contrast, tort damages are awarded to [fully] compensate the victim for [all] injury suffered." (emphasis added) (second and third alterations in original) (quoting *Applied Equipment*, 7 Cal. 4th at 515, 516)). As the California Supreme Court explained most recently in *Robinson Helicopter*,

A breach of contract remedy assumes that the parties to a contract can negotiate the risk of loss occasioned by a breach. "'[W]hen two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law.'" However, "[a] party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract." No rational party would enter into a contract anticipating that they are or will be lied to.

34 Cal. 4th at 992–93 (quoting *Applied Equipment*, 7 Cal.4th at 517; Tourek et al., *Bucking the "Trend": The Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and Misrepresentation*, 84 Iowa L.Rev. 875, 894 (1999)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7733 DMG (ASx)** | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 14 of 22 |
|---|---|---|---|

Accordingly, while the Court must take care not to "open the door to tort claims in virtually every case in which a party promised to make payments under a contract but failed to do so," the Court also must consider whether the "damages the plaintiff seeks are" in fact "the same economic losses arising from the alleged breach of contract." *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 868 F. Supp. 2d 983, 991–92 (E.D. Cal. 2012) (quoting *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009)); *see also Robinson Helicopter*, 34 Cal. 4th at 993 (noting that the higher pleading standard for fraud helps guard against "open[ing] the floodgates" to tort litigation based on contractual breach).

The Court turns next to the exceptions advanced by Plaintiffs to determine whether the economic loss rule should apply to bar the cause of action for fraud.

### b.    Application of the Intentional Tort Exception

First, the Court considers the intentional tort exception.   In *Erlich v. Menezes,* the California Supreme Court explained as follows:

> [O]utside the insurance context, "a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages."

21 Cal. 4th at 553–54 (second alteration in original) (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105 (1995)); *see also Robinson Helicopter*, 34 Cal. 4th at 991 n.7 ("The economic loss rule is designed to limit liability in commercial activities that *negligently or inadvertently* go awry, not to reward malefactors who affirmatively misrepresent . . . ." (emphasis added)); *Harris v. Atlantic Richfield Co.*, 14 Cal. App. 4th 70, 78 (1993) ("When one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort.").

In *Erlich*, the Court disallowed the recovery of tort damages for defendant's negligent breach of contract—the contractor defendant's "ineptitude" resulted in substantial water damage to the "dreamhouse" he built for plaintiffs—because a "negligent breach of a contract . . . is not sufficient to support tortious damages for violation of an independent tort duty." *Erlich*, 21 Cal. 4th at 548, 553, 554.  In reaching that conclusion, the Court made clear, however, that a tort claim may proceed alongside a breach claim.  *See id.* at 551 ("[T]he same wrongful act may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 15 of 22 |
|---|---|---|---|

constitute both a breach of contract and an invasion of an interest protected by the law of torts." (quoting *N. Am. Chem. Co.*, 59 Cal. App. 4th at 774)), 553 ("Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated.").

Following *Erlich*, the California Supreme Court in *Robinson Helicopter* declined to apply the economic loss rule where the defendant's alleged fraud was separate from its breach, even though both arose in the context of a contractual arrangement. Although the *Robinson Helicopter* holding was narrow and limited, in part, to circumstances not at issue in this case,[9] the decision provides a helpful articulation of the distinction between breach of contract and breach of an independent, noncontractual duty. Its explanation of the contours of the economic loss rule and its exceptions, like *Erlich*'s before it, therefore offers guidance for the doctrine's application in this case.

Here, Plaintiffs base many of the fraud allegations on conduct that goes above and beyond the 1982 Agreement's obligations even though the events giving rise to the cause of action occurred in the context of the alleged contractual relationship between the parties. *See id.* at 989 ("[A] party's contractual obligation may create a legal duty and . . . a breach of that duty may support a tort action." (citing *Erlich*, 21 Cal. 4th at 551)). For example, Defendants allegedly breached the 1982 Agreement by failing to provide the required accounting statements and to remit all royalties owed, but they also allegedly engaged in separate nefarious accounting practices to conceal and underreport (and therefore underpay) TIST profits, such as bundling unsuccessful films and music rights with TIST in the Embassy catalogue, misrepresenting and manufacturing false expense deductions, self-dealing between subsidiaries, and lying about the recovery of a $1.6 million settlement. SAC at ¶ 86; *see also id.* at ¶¶ 49–54 (describing improper bundling and accounting practices with examples).

This alleged misconduct amounts to more than mere false assurances that Defendants were complying with the 1982 Agreement. *See, e.g., Antonick v. Elec. Arts Inc.*, No. C 11-1543 CRB, 2014 WL 245018, at *14 (N.D. Cal. Jan. 22, 2014) (breach of agreement accompanied by

---

[9] First, after explaining the economic loss rule and its application to the facts at bar, the Court announced its holding. *See Robinson Helicopter*, 34 Cal. 4th at 991 ("We hold the economic loss rule does not bar [plaintiff]'s fraud and intentional misrepresentation claims because they were independent of [defendant]'s breach of contract." (citing *Erlich*, 21 Cal. 4th at 552–54)). Then, after discussing the policy implications of the decision, the Court qualified its holding. *Id.* at 993 ("Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss."). Several courts have opined that the decision may not be applicable outside of the products liability or contracts-for-goods context. *See, e.g., JMP Sec. LLP v. Altair NAnotechs. Inc.*, 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012); *United Guaranty*, 660 F. Supp. 2d at 1183. As made clear in this Order, the Court does not premise the instant decision not to apply the economic loss rule on *Robinson Helicopter* alone.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7733 DMG (ASx)** | Date | August 28, 2018 |
| --- | --- | --- | --- |

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 16 of 22 |
| --- | --- | --- | --- |

representations that defendant is not in breach does not amount to actionable tort under economic loss rule); *Multifamily*, 629 F. Supp. 2d at 1146 (same). Rather, Defendants allegedly "sought to frustrate [Plaintiffs'] enjoyment of contracted-for benefits" and then made additional misrepresentations about those efforts. *Erlich*, 21 Cal. 4th at 553. Such conduct is distinct from the efficient breach that the economic loss rule seeks to protect. *See Freeman & Mills*, 11 Cal. 4th at 106, 109 ("The efficient breach of contract occurs when the gain to the breaching party exceeds the loss to the party suffering the breach, allowing the movement of resources to their more optimal use. . . . Breaches accompanied by deception or infliction of intentional harm may be so disruptive of commerce and so reprehensible in themselves that the value of deterring such actions through the tort system outweighs the marginal loss in the predictability of damages that may result.").

Moreover, the alleged extra-contractual conduct imposed additional costs on Plaintiffs not reasonably within the parties' contemplation during contract formation, such as out-of-pocket expenses to discover Defendants' wrongful conduct and an over-$14,000 outstanding balance allegedly owed to Defendants due to the manufactured expense deductions. SAC at ¶¶ 22, 50, 52, 92; *see Robinson Helicopter*, 34 Cal. 4th at 992–93 (fraud lies outside contracting parties' reasonably anticipated losses from breach); *Erlich*, 21 Cal. 4th at 550 (limitations of contract damages). Accordingly, Plaintiffs have stated a claim "by which [they] suffered damage independent from the nonpayment of royalties" under the 1982 Agreement. *Audigier Brand Mgmt. v. Perez*, No. CV 12-5687-CAS (RZx), 2012 WL 5470888, at *6 (C.D. Cal. Nov. 5, 2012).

Defendants contend that *Alexsam Inc. v. Green Dot Corp.* urges the economic loss rule's application in this case. The Court disagrees. In *Alexsam*, the plaintiff brought suit against defendants in connection with their alleged breach of a settlement agreement involving a patent dispute. No. 2:15-cv-5742-CAS (PLAx), 2017 WL 2468769, at *2 (C.D. Cal. June 5, 2017). Plaintiff argued that defendants failed to pay royalties under the settlement agreement and falsely represented their belief that they did not owe such royalties. *Id.* at *2–3. The *Alexsam* plaintiff raised causes of action for breach of contract, accounting, and intentional misrepresentation. *Id.* at *1.

Defendants' reliance on *Alexsam* is misplaced. Notably, the District Court asserted that, according to *Robinson Helicopter*, the economic loss rule "applies 'even when the breach is accomplished in a fraudulent manner.'" *Alexsam*, 2017 WL 2468769, at *4 (quoting *Robinson Helicopter*, 34 Cal. 4th at 995). Yet, that language appears in the *Robinson Helicopter* decision's dissent, where Justice Werdegar stated,

> *Until today*, we have rejected the notion that [a bad faith breach of contract, a breach of contract by fraudulent means, or a bad faith denial of breach] could give

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 17 of 22 |
|---|---|---|---|

rise to punitive damages. . . .  The law eschews inquiry into a breaching party's motives; whether acting in good faith or bad faith, a party that breaches a commercial contract must pay only contract damages. . . . *even when the breach is accomplished in a fraudulent manner.*

34 Cal. 4th at 995 (Werdegar, J., dissenting) (emphasis added) (citations omitted).

More importantly, the *Alexsam* complaint suffered additional deficiencies not present here.  For example, the plaintiff failed to allege how defendants' supposed fraudulent conduct caused the purported injuries.  *Alexsam*, 2017 WL 2468769, at *5.  Additionally, the operative pleading and exhibits contained readily distinguishable allegations.  In *Alexsam*, defendants represented that it "did not believe it owed any royalties because its products were not covered by the [relevant] patents," requested that plaintiff provide a "more specific" explanation of why defendants' use of the product was "relevant to the question of royalties," and offered to consider plaintiff's position "in good faith" but otherwise did not "see a basis to believe that royalties are owed." *Id.* at *2–3 (quoting the record).  From these statements, the District Court concluded that "[defendants'] contention that it owed no royalties under the [settlement agreement] was always implicit in its decision not to pay royalties," and "[t]hat [plaintiff] elicited affirmative representations about royalties d[id] not convert [its] breach of contract claim into a claim for fraud." *Id.* at *6.

The SAC paints a very different story in this case, as explained above.  Taking those allegations as true, as this Court must at the motion-to-dismiss stage, Plaintiffs have alleged Defendants' breach of a duty not arising from contract, and resulting harm distinct from breach.  Thus, the economic loss rule does not apply to bar, wholesale, Plaintiffs' cause of action for fraud because of the intentional tort exception.[10]  *See, e.g., Herring Networks, Inc. v. AT&T Servs., Inc.*, No. 2:16-cv-01636-CAS-AGR, 2016 WL 4055636, at *14 (C.D. Cal. July 25 2016) (declining to apply economic loss rule where defendants allegedly took affirmative steps to reduce benefits owed to plaintiff under the agreement); *Bentham v. Bingham Law Group*, No. 13cv1424-MMA (WVGx), 2013 WL 12186171, at *11–12 (S.D. Cal. Nov. 15, 2013) (declining

---

[10] UMG joins in Studiocanal's motion, and thus urges dismissal based on the economic loss rule, despite UMG's contention that it is neither a party to nor bound by the 1982 Agreement.  Plaintiffs oppose application of the economic loss doctrine in part based on the special relationship exception, arguing that the exception applies even when privity of contract exists.  That is not the case. *See, e.g., Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092–93 (C.D. Cal. 2017) (exception applies when parties are *not* in contractual privity).  Studiocanal's arguments against the special relationship exception's operation here mostly advance this proposition.  Moreover, the Studiocanal MTD papers do not argue the exception's operation as to UMG, and absent briefing on the subject from UMG, the Court will not address the exception.  Notably, because of the intentional tort exception, the Court need not consider the alternative exception Plaintiffs advance to avoid application of the economic loss rule at this time.

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7733 DMG (ASx)** | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 18 of 22 |
|---|---|---|---|

to apply economic loss rule where defendant allegedly breached agreement by tortious means, including the use of deceit, fraud, and conversion).

The Court therefore **DENIES** the Studiocanal MTD under the economic loss rule.

### 2. Sufficiency of the SAC's Allegations (as Against UMG)

UMG argues independently that the SAC fails to allege it made fraudulent statements directly to Plaintiffs, and that the pleading lacks the requisite particularity with respect to the fraud claim.

The elements for a fraud claim are (1) false representation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). To satisfy Rule 9(b)'s particularity standard, a plaintiff must allege particular facts explaining the circumstances of the fraud, such as "the who, what, when, where, and how" of the alleged misconduct. *Id.* at 1106.

Although Rule 9(b) carries a heightened pleading standard, such standard "is not an invitation to disregard[] Rule 8's requirement of simplicity, directness, and clarity," and "among [the Rule's] purposes [is] the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (1996). Moreover, the particularity requirement is meant to "ensure[] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong" and to "prevent[] the filing of a complaint as a pretext for the discovery of unknown wrongs." *Semegen v. Wediner*, 780 F.2d 727, 731 (9th Cir. 1985).

The SAC pleads sufficient facts about the alleged fraud to put UMG on notice of its alleged misconduct. Plaintiffs contend that UMG, in performing its alleged reporting obligations in connection with the TIST sound recording rights from 1989 to 2016, engaged in anti-competitive and deceptive behavior by "willfully conceal[ing]" revenues and "manipulate[ing] years of accountings to retain monies due and owing to Plaintiffs." SAC at ¶¶ 51, 53, 54. Examples of the alleged fraudulent accounting practices include the improper "bundling" and "cross-collateralization" of TIST with unsuccessful films to hide profits stemming from pertinent TIST rights. *See id.* at ¶¶ 49–54. According to Plaintiffs, such practices resulted in UMG reporting and paying to Studiocanal "a mere $98 . . . in gross receipts from music sales" over the 27-year period, despite TIST's widespread acclaim and cultural significance that has extended past the early 2000s. *Id.* at ¶ 54; *see id.* at ¶¶ 40–41, 51. These allegations provide a factual basis for the plausibility of Plaintiffs' cause of action for fraud.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | | Date | August 28, 2018 |
|---|---|---|---|---|
| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | | Page | 19 of 22 |

     In turn, Studiocanal allegedly provided to Plaintiffs profit participation statements that reflected the fabricated reduced earnings conveyed by UMG, and paid them less in royalties than actually owed. *See id.* at ¶¶ 50–51, 87–91. Defendants' possessed exclusive knowledge of the revenues collected—UMG with respect to the TIST soundtrack rights—so Plaintiffs relied on the statements and Defendants' representations regarding their accuracy, and refrained from investigating the accounting until 2013 and from shifting control over the assets away from Defendants. *Id.* at ¶¶ 51–53, 87, 91; *see also, e.g., OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007) (reliance is justifiable when "circumstances were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation," and such reasonableness "is judged by reference to the plaintiff's knowledge and experience" (alterations in original) (quoting *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986))). As a result, Plaintiffs have received less in royalties than they deserve, and Plaintiffs have incurred additional out of pocket costs as discussed above. *See* SAC at ¶¶ 91–92.

     Because UMG allegedly underreported and underpaid music-related earnings to Studiocanal, and Studiocanal allegedly underreported and underpaid all TIST earnings to Plaintiffs, it is not clear whether the allegations of improper expense deductions and undocumented charges are aimed at the Studiocanal Defendants (and their agents or representatives) as well as, or instead of, UMG. *See, e.g., id.* at ¶¶ 51, 54; *see also id.* at ¶ 21 (using "Vivendi" to refer to Vivendi, Studiocanal, and UMG collectively). Given Plaintiffs' allegations that Vivendi's subsidiaries, including UMG, worked together to hide profits and manipulate revenue, and that Defendants have exclusive knowledge over the accounting process, it is plausible that Plaintiffs would not know all minute details of the alleged fraud. *E.g., id.* at ¶¶ 51, 87; *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) ("There is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct."). The Court therefore will not dismiss the fraud allegations for lack of specificity due to minor ambiguities in the pleading. Plaintiffs have sufficiently alleged a fraudulent scheme that involves UMG, and which sufficiently puts Defendants on notice of the import of the allegations against them.

     Additionally, it is of no moment that Plaintiffs do not allege direct misrepresentations between UMG and Plaintiffs. California law recognizes as actionable "indirect misrepresentation," by which an alleged tortfeasor makes a misrepresentation to an intermediary who, in turn, conveys the information to the injured party. *E.g., Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095–96 (1993) (discussing the principle and collecting cases); *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 94 (2001) (same). The plaintiff must, in turn, "act[] in justifiable reliance upon" the misrepresentation. *Mirkin*, 5 Cal. 4th at 1096 (quoting Restatement (Second) of Torts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 20 of 22 |
|---|---|---|---|

§ 533). Here, Plaintiffs have alleged both UMG's misrepresentation conveyed to them through an intermediary and their justifiable reliance on the communication. *See* SAC at ¶¶ 51, 91.

Yet, to maintain a fraud claim under an indirect misrepresentation theory, the plaintiff must also allege that the defendant "intend[ed] or [had] reason to expect that [the misrepresentation] w[ould] be '*repeated and acted upon by the plaintiff.*'" *Lovejoy*, 92 Cal. App. 4th at 94 (quoting *Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 605 (1995)). The SAC states that UMG has an obligation to report to and pay Studiocanal, which in turn reports to and pays Plaintiffs. SAC at ¶ 51. The pleading does not allege, however, UMG's knowledge—actual or implied—or reasonable expectation that Studiocanal would convey UMG's report to Plaintiffs, as discussed in Section III.A, *supra*, in the breach and accounting discussion.

The Court therefore **GRANTS** the UMG MTD in connection with the fraud claim. Because the UMG MTD moving papers discuss at length UMG's potential knowledge of Studiocanal's reporting obligations to Plaintiffs, the Court also **GRANTS** Plaintiffs leave to amend this deficiency, if possible.

## C.     Ripeness of Copyright Reversion Claim

Under section 203 of the Copyright Act, an author of any work, other than a work for hire, may terminate the exclusive or nonexclusive grant of a transfer or license of copyright or any right thereunder. *See* 17 U.S.C. § 203(a). Under the facts presented in this case, the termination notices, if valid, will be effective beginning March 2, 2019. SAC at ¶ 114; *see* 17 U.S.C. § 203(a)(3), (a)(4)(A). Upon the effective date, all rights revert to the authors, but future rights vest as of the date that the termination notices were served. *See* 17 U.S.C. § 203(b)(2).

UMG argues that Plaintiffs' claim for declaratory relief concerning copyright reversion is not ripe for adjudication. UMG advances two reasons: first, UMG "has not taken a position in this litigation or elsewhere concerning its sound recording copyrights," whereas Studiocanal has threatened challenges to Plaintiffs' termination rights in connection with the TIST movie and music composition rights; and second, the effective date of the termination notices is no earlier than March 2019. UMG MTD at 22–24.

To determine whether there is a ripe controversy within this Court's jurisdiction, the Court must decide "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1027–28 (C.D. Cal. 2012). Plaintiffs carry the burden of establishing the existence of an actual controversy. *Id.* at 1028. They contend "[t]he notion that UMG will take a position different from its corporate parent [with respect to the termination

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 16-7733 DMG (ASx) | Date | August 28, 2018 |
|---|---|---|---|

| Title | *Century of Progress Productions v. Vivendi S.A., et al.* | Page | 21 of 22 |
|---|---|---|---|

notices' validity] defies credulity," and they urge the Court to decide the validity of the notices for judicial economy reasons due to Studiocanal's open challenge to Plaintiffs' termination rights. Opp'n at 28–29 (citing *Ray Charles Found. V. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015)). The Court concludes that the controversy is ripe.

UMG relies on *Mintz v. Mark Bartelstein & Associates*, but that case does not support UMG's position that there is no actual controversy to adjudicate. Notably, *Mintz* did not involve a ripeness question with respect to copyright termination notices. Moreover, the facts are otherwise distinguishable. There, the plaintiff sought a declaratory judgment invalidating two provisions in his employment contract with Defendant: (1) a two-year non-compete cause; and (2) a requirement of 14 days' written notice of termination. *Mintz*, 906 F. Supp. 2d at 1027.

The District Court found that plaintiff lacked standing to seek declaratory relief in connection with both provisions. *Id.* at 1027–28. With respect to the non-compete clause, the defendant's unequivocal concession that it did not want, and would not attempt, to enforce the provision at any point "now or in the future" precluded plaintiff from demonstrating the existence of a controversy with "sufficient immediacy and reality" to warrant a declaratory judgment. *Id.* at 1028. As for the notice provision, the Court found that the plaintiff "misconstrued" defendant's position in its motion papers to "conjure an actual controversy," and that the parties' positions "[were] not in fact opposed." *Id.* Such a manufactured controversy did not satisfy the plaintiff's burden to show an actual controversy.

In this case, UMG has not taken a stance similar to that of the defendant in *Mintz*. UMG has not conceded that Plaintiffs' termination notices are valid, nor has it made clear to either Plaintiffs or this Court that it has "no intention now or in the future" of challenging the termination notices. Rather, UMG asserts that it has yet to take a position on the validity of the termination notices. Such an evasive stance is insufficient for the Court to find a lack of actual controversy with sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Moreover, the actual controversy between Plaintiffs and Studiocanal supports the request for declaratory judgment as to the termination notices served on UMG. Plaintiffs rely on royalties from the TIST copyright grants, which Defendants have failed to exploit in Plaintiffs' best interests. As a result, Plaintiffs suffer from reduced royalties. Plaintiffs seek to terminate the grants, and the terminations, if valid, would allow Plaintiffs to shift control of the copyrights away from Defendants, redressing that injury. According to the SAC, Studiocanal challenges the termination notices on the ground that the TIST related works are works for hire not subject to termination, which Plaintiffs heavily dispute, and Studiocanal contends that the termination notices have placed a cloud over Studiocanal's interests in the works. SAC at ¶¶ 3–4, 115–16. A determination of the nature of Plaintiffs' authorship does not require this Court "to engage in

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 16-7733 DMG (ASx)** | | Date | August 28, 2018 |
|---|---|---|---|---|

| Title | ***Century of Progress Productions v. Vivendi S.A., et al.*** | | Page | 22 of 22 |
|---|---|---|---|---|

abstract inquiries about speculative injuries." *See, e.g.*, *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015).

Similarly, although Studiocanal's interests in the TIST film, distribution, and musical composition rights are distinct from UMG's interests in the TIST sound recording rights, Studiocanal has directly challenged Plaintiffs' terminations, and UMG has not taken a position to moot the dispute. Further, it would be inefficient for the Court to analyze the nature of Plaintiffs' authorship of TIST-related works for the sole purpose of adjudicating the validity of the notices related to Studiocanal's copyrights, but to compel Plaintiffs to file another lawsuit with respect to UMG's copyrights. Moreover, "[t]he fact that a document," such as a termination notice, "has been recorded is not a determination by the U.S. Copyright Office concerning the validity or the effect of that document. *That determination can only be made by a court of law.*" *Id.* at 1117 (quoting *Compendium of Copyright Office Practices III* § 2305 (2014)).

Here, there is a ripe controversy over the validity of Plaintiffs' termination notices. *See Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir.2010) ("The ripeness doctrine is peculiarly a question of timing, designed to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action."). The Court thus **DENIES** the UMG MTD's ripeness challenge.

**IV.**
**CONCLUSION**

In light of the foregoing, Defendants' MTD is **GRANTED in part** with leave to amend and **DENIED in part** consistent with this Order. Plaintiffs shall file an amended complaint that cures the specific deficiencies as to Defendant UMG discussed in this Order, or inform the Court and Defendants that they do not intend to amend, within 21 days from the date of this Order. Defendants shall file their response within 21 days after the filing and service of the amended complaint or notification that no amended complaint will be filed.

**IT IS SO ORDERED.**